26754, 26756.   KNIGHT v. LOWERY (two cases).

ARGUED NOVEMBER 8, 1971—DECIDED DECEMBER 2, 1971—
REHEARING DENIED DECEMBER 17, 1971.

*Levy, Askew, Warfield, Graff & Mabie, Lefferts L. Mabie,
Jr., Colson & Hicks, Robert Orseck, Jay, Garden & Sherrell,
Clayton Jay, Jr.,* for appellants.

*Watson, Keenan, Spence & Lowe, G. Stuart Watson, Divine, Busbee & Wilkin, George Busbee,* for appellee.

ALMAND, Chief Justice. This case is before us by grant of
the writ of certiorari to the Court of Appeals. At issue is
this question: Does a release, granted by one injured in an
automobile accident in favor of the party responsible for
the injury and "all other persons," also release a physician
alleged to have been negligent in his subsequent treatment
of the injuries?

Jack D. Knight, Jr., a minor, sustained serious and permanent injuries in an automobile accident on February 25,
1967, and was treated by Dr. William D. Lowery, Jr., a
neurosurgeon, from February 25 until April 1, at which
time the boy was transferred to his hometown hospital.
After again examining the boy on April 12, Dr. Lowery had
no further contact with the Knights until this suit was
commenced.

On June 30, Jack D. Knight, Sr., individually and as

guardian of his son, and Mrs. Knight, the boy's mother, executed a release in favor of Harold and Jack Boling, the driver and owner of the automobile involved; State Farm Mutual Automobile Insurance Company, the Bolings' insurance carrier; and "all other persons." In return, the Knights received a payment of $10,500 which was the extent of the Bolings' liability and medical payment coverage with State Farm.

The release signed by the Knights was a pre-printed form containing blank spaces in which were inserted the type-written names of the Bolings and of State Farm, the date of the accident, and a brief description of the accident. Dr. Lowery was not named. The document is entitled "Release" and provides as follows: ". . . the undersigned hereby releases and forever discharges Jack Boling, Harold Boling and State Farm Mutual Automobile Insurance Company their heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable or who might be claimed to be liable, none of whom admit any liability but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 24 day of February, 1967, at or near Fitzgerald, Ben Hill County, Georgia, in which accident Jack D. Knight, Jr., minor son of the undersigned sustained severe, permanent and permanently disabling injuries.

"Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident."

Thereafter, the Knights filed suit against Dr. Lowery for

professional negligence, alleging that he had failed to diagnose and remove a subdural hematoma which developed during his course of treatment, thereby causing further injury to their son's brain. Dr. Lowery gave as one of his defenses the aforementioned release, asserting that it barred the action. The trial judge granted the doctor's motion for summary judgment made on that basis, and the Knights appealed to the Court of Appeals.

The Court of Appeals affirmed the trial court, holding, "purely as a matter of contract law," that the release was unambiguous, and that Dr. Lowery was entitled, as a donee beneficiary, to rely upon the release and to invoke the parol evidence rule to prevent its variance.

We granted the writ of certiorari and now reverse.

■ We consider first whether the Knights, by releasing the Bolings and State Farm from liability, thereby were precluded as a matter of law, from bringing suit against Dr. Lowery for his alleged negligence in the subsequent treatment of their son's injury. A majority of the courts which have considered this question have ruled that such an action is barred, unless the physician's negligence has produced an entirely new injury. These cases are collected in annotations found in 39 ALR3d 260 and 40 ALR2d 1075. Indeed, the annotations indicate that Georgia is a part of that majority by virtue of *Edmondson v. Hancock.* 40 Ga. App. 587 (151 SE 114). In that 1929 decision, the Court of Appeals held that a physician employed by a railroad company was not liable to an employee of the company for aggravation of injuries for which the company was responsible where the employee had executed a release acknowledging satisfaction by the company of his damages. However, we have found no Supreme Court decision which is directly in point.

As noted in the annotation in 39 ALR3d 260, 264, a number of courts which formerly supported the majority rule have repudiated it, while others, faced with the issue for the first time, have rejected it. The growing minority view is that "a release by an injured party of the one re-

sponsible for the injury does not of itself, in the absence of language indicative of such an intention on the part of the parties, preclude an action by the injured party against the negligently treating physician or surgeon, at least unless there has been full compensation for the injured party's total injuries." 39 ALR3d 260, 264. We now adopt the minority view.

This court long ago ruled that a release executed in favor of one joint tortfeasor, in full settlement of damages, acts also as a release in favor of all other joint tortfeasors. *Donaldson v. Carmichael,* 102 Ga. 40 (29 SE 135). The reasons underlying this doctrine are, first, that joint tortfeasors contribute to a single injury for which there is but one cause of action, and second, that once the damage has been paid in full by one joint tortfeasor, the injured party has no right to seek an additional or double recovery from another. We do not deal today with the soundness of that holding, since the situation which it exemplifies is not present in the instant case.

Here, the physician and the driver of the automobile did not act in concert to produce a single injury, and they are not joint tortfeasors. Rather, we conclude that they are successive tortfeasors, and that Dr. Lowery's alleged negligence, while contributing to the overall damage, was subsequent to the original injury and created in favor of the injured party a separate cause of action against him. We are in full accord with the view taken by the New York Court of Appeals in Derby v. Prewitt, 12 N. Y. 2d 100, 105 (236 NYS2d 953, 187 NE2d 556), wherein it is said:

"Their wrongs were independent and successive, rather than joint, and this being so, the plaintiff had not one but two separate and distinct causes of action, one against the cab driver for the negligent operation of his vehicle and the other against the doctor for his alleged malpractice in treating the fracture which the plaintiff sustained in the automobile accident. It is true that the driver could have been held liable for the aggravation of the injury caused by the doctor's negligence, but as pointed out above, that liability is not the result of any concept of joint wrongs but is

rather the product of the familiar rule that a wrongdoer is responsible for the reasonably foreseeable consequences of his tortious act, including the negligent conduct of others. Conversely, it would defy reason to hold the physician liable for injuries caused by the original wrongdoer which were not the consequences of his own carelessness, and no one suggests that a release of the doctor would completely discharge the original wrongdoer.

"Nor does the second asserted reason for the release doctrine—the presumption of full satisfaction—make any sense in the context of this case. Irrebuttable presumptions have their place in the law but only where public policy demands that inquiry cease. Where the cause of action is single and the liability of one wrongdoer is identical with that of the other, there may be warrant for erecting such a barrier to suit after settlement. However, where, as here, neither of these elements is present, there is no basis or justification for preventing the plaintiff, by an artificial rule of law, from recovering the full compensation to which she would otherwise be entitled for her injuries."

The alleged wrongs of the driver of the automobile and of the doctor being successive, rather than joint, a release of the one would not release the other, unless (a) all damages, including those caused by the doctor, were paid in full, or (b) the parties intended thereby to release both tortfeasors. As for the question of damages, it is up to the plaintiff to show that the $10,500 settlement did not compensate him in full for his injuries. In this connection, we note that Jack D. Knight, Sr., asserted in an affidavit filed in opposition to Dr. Lowery's motion for summary judgment, that his son's medical and related expenses were in excess of $37,000.

■ The remaining question is whether the parties to the settlement intended thereby to release Dr. Lowery from all liability, or only to settle the matter with respect to the Bolings and State Farm. If the release be taken at face value, it is clear that not only Dr. Lowery but the whole world is freed from liability. The alternative is to permit the introduction of parol evidence to determine if this was

the actual intention of the parties to the agreement.

The parol evidence rule, which is too basic to require the citation of authorities, is simply that in the absence of accident, fraud or mistake, parol evidence is inadmissible to vary or add to the terms of a written contract. However, as is usually the case, there are exceptions to this rule. A number of states have held generally that the parol evidence rule does not apply to a stranger to a contract, and specifically that parol evidence is admissible in favor of or against a stranger to a release. These cases are collected in an annotation at 13 ALR3d 313.

We are of the opinion that the case of a release presents an exception to the general rule, and that in such a case the parol evidence rule is applicable only to the parties to the instrument or to their privies. Dr. Lowery was not a party to the agreement between the Knights and the Bolings, he contributed nothing to the settlement, and he was not named in the release. We see no reason, therefore, why he should share the benefits conferred on the Bolings unless such was clearly the intention of the parties.

This court has held that, "One who is a stranger to a deed or other instrument in writing is not bound by any recitals of fact therein contained, and accordingly has the right to contradict the same by parol evidence and show that the writing does not express the real truth of the transaction to which it relates." *Dickey v. Grice,* 110 Ga. 315 (35 SE 291). Since parol evidence is admissible in favor of a stranger to a writing, we see no reason why it should not also be admissible against him. Accordingly, we hold that parol evidence may be admitted in favor of or against a stranger to a release to ascertain the true intention of the parties with regard to those persons who were to be bound or covered by the release. Since the release in this case prima facie releases all the world, the burden is on the plaintiff to show that Dr. Lowery was not included.

*Judgment reversed. All the Justices concur, except Felton, J., who concurs specially and Grice and Undercofler, JJ., who dissent.*

FELTON, Justice, concurring in the judgments and the first division of the opinion, and dissenting from the second division of the opinion.

1. I would go a step or steps further in holding that the complaints against the appellees are permissible as a matter of law:

First, for the simple and obvious reason that such a release as is relied on in this case is completely devoid of consideration. As a matter of law the parties cannot claim that there is consideration for the release as to the appellee. The consideration is the relief of the original tortfeasors from claims resulting from the *collision* causing injuries to the appellants in which the appellants were not involved. Neither party to the release can claim that he or she is a self-appointed agent or representative of an unknown person to release from liability a party, who is not liable in tort or otherwise for the original injury, from damages for a separate tort not yet committed and wholly disconnected from the original injuries. The parties to the release cannot fictionally create such a liability and cause a release therefrom to be a legal, moral and legitimate consideration, where it could not be anticipated by either party. Such a release cannot make real a catch-all imaginary release from a tort separate and distinct from the original tort and without identifying the party released. It is true that a contract may be supported, where a third-party beneficiary is concerned, by a consideration furnished by a party to the contract where the subject matter and beneficiaries are identified where the contract clearly shows all of the necessary ingredients of the consideration bestowed on the third party. The law now provides that a third-party beneficiary may sue in his own name but he must be a party on whom the party or parties bestowing a benefit have a right to do it. They cannot cast out a wide net and release someone whom they do not represent from a claim with which they have no possible concern except to meddle with other parties' business. Under the circumstances in this case, as a matter of judicial construction,

the contract is totally without consideration, for the reason that the parties had no right to provide for a release from liability of anyone who was not involved in the collision causing the original tortious injuries.

2. The contract of release in this case insofar as all parties are concerned, is patently against public policy. To do what the appellees are seeking to do in this case is so repulsive to the conscientious scruples of justice and fair play that to argue the question at greater length would be superfluous. The idea of even authorizing parol evidence to show justification for such release as we have in this case is to me unthinkable. What the law says is not palatable cannot be made so by parol evidence.

If the evidence is conflicting, under the majority ruling, the claims of the appellants could still be defeated by a result which is against public policy and without consideration. The only burden the appellants have is to show that the amount received from the original tortfeasor did not completely and fully compensate for the total injuries suffered.

Going back to my Division 1 with reference to consideration in a third-party beneficiary contract, it has been suggested that what I have said about consideration in such a case is wide of my mark "for the reason that nothing prohibited a man from promising a large sum to the first man who reached the moon." Such a promise would *not have to be performed* unless the promisor gratuitously donated the money to such a man after his identity was discovered, or the third-party beneficiary knew about the promise, accepted the offer and went to the moon after accepting the offer made him. If he never did know of such an offer before his trip but only heard about it upon his return to earth he could not prevail in a complaint to recover the gratuity because the offeror could defend upon the ground of lack of consideration. One cannot be liable for the failure to keep a promise to make a gift unless the promise is based on a valuable consideration.

It would seem that courts in the past have construed re-

leases as releasing every possible one who could be fished into responsibility, under a rule called the "unity of release rule." With that idea in mind, it seems that the courts in the cases hereinafter cited changed their states' laws because of the unfavorable opinion of what they had been doing and held exactly what the majority now holds (except as to the parol evidence as to the intention in the release). The cases below hold that the release does not cover the treating physician's tort after the original tort in the causing of the collision. Derby v. Prewitt, 12 N. Y. 2d 100 (187 NE2d 556); Young v. State, 455 P. 2d 889 (Alaska 1969); McMillen v. Klingensmith, 467 S. W. 2d 193 (Texas 1971); and see 30 NACCA L. J. 156-161 (1964) and cit.

UNDERCOFLER, Justice, dissenting. In my opinion the majority has misconstrued the minority rule concerning the effect of a general release. As stated in 39 ALR3rd 260, 264, "Thus, a sizable number of courts now support a modern rule that a release by an injured party of the one responsible for the injury does not of itself, *in the absence of language indicative of such an intention on the part of the parties*, preclude an action by the injured party against the negligently treating physician or surgeon, at least unless there has been full compensation for the injured party's total injuries." (Emphasis supplied). In the instant case the intention of the parties is clear. The contract shows their intention to release "all other persons, firms or corporations liable or who might be claimed to be liable . . . on account of all injuries, known and unknown, . . . which have resulted or may in the future develop from an accident which occurred on . . . for the purpose of making a full and final compromise and adjustment and settlement of any and all claims, disputed or otherwise, on account of injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident."

The release permits no conclusion other than that the plaintiff intended to release the defendant physician.

Furthermore, Derby v. Prewitt, 12 N. Y. 2d 100 (236

NYS2d 953, 187 NE2d 656), (3 judges dissenting) relied upon by the majority is not authority for their conclusion since it appears that only the original wrongdoer was released in that case. There was no language indicative of an intention to release others. The limited holding of Derby v. Prewitt, supra, was demonstrated three months later in Oxford Commercial Corp. v. Landau, 12 N. Y. 2d 362 (239 NYS2d 865, 190 NE2d 230), when the entire court held that a release of "'any person whomsoever' except those specifically named is too clear and precise to admit of evidence that the parties intended to exclude the defendants from this all-inclusive category."

I am authorized to state that Justice Grice concurs in this dissent.