**UNITED STATES LINES, INC.,**
**Plaintiff-Appellee,**

**v.**

**UNITED STATES of America,**
**Defendant-Appellant.**

**No. 72-2055.**

United States Court of Appeals,
Fifth Circuit.

Dec. 12, 1972.

R. Jackson B. Smith, Jr., U. S. Atty., Augusta, Ga., Lamar C. Walter, Asst. U. S. Atty., Savannah, Ga., for defendant-appellant.

Gustave R. Dubus, III, George H. Chamlee, Savannah, Ga., for plaintiff-appellee.

Before TUTTLE, WISDOM and SIMPSON, Circuit Judges.

PER CURIAM:

This is an appeal by the United States from an interlocutory order by the trial court granting a motion of United States Lines, Inc., to strike two defenses urged by the United States to a complaint filed by United States Lines, Inc. for "full or partial indemnity or contribution for the amounts . . . paid in settlement of the claim of Everett F. Campbell against plaintiff [United States Lines, Inc.] and all or part of the maintenance and cure payments made by the plaintiff." These two defenses are (1) the failure of the complaint to allege facts upon which relief could be granted, and (2) the statute of limitations.

We have carefully considered the opinion of the trial court supporting its order striking these defenses. Concluding as we do, that this opinion accurately and succinctly states the legal principles controlling such a suit, we adopt the order of the trial court as the judgment of this court. Since the judgment of the trial court is not published, we appended it hereto as an exhibit to this opinion.

The order of the trial court is affirmed.

## APPENDIX

### ORDER ON MOTIONS TO STRIKE DEFENSES

#### (Filed April 21, 1972)

In this Federal Torts Claim case United States Lines, Inc. sues the Government for contribution and indemnity, in whole or part, for the amount it paid in the settlement of a suit against it by an injured seaman. The injuries were received aboard the S.S. "American Reporter" in 1966 when the seaman, Everett F. Campbell, fell after tripping on deck cargo lashings.

He thereafter filed an action for damages in admiralty in the United States District Court for the Eastern District of Pennsylvania. The defendant, United States Lines, Inc., brought a third-party action against the United States for full or partial indemnity or contribution in the event of an adverse judgment. The claim was based on the theory of negligence of the United States Public Health Service in failing to furnish competent doctors and technicians and its failure to give competent treatment to the plaintiff following his injury. The third-party action was dismissed by the District Court in 1968 because of lack of venue. Subsequently, defendant's motion to transfer the action to this Court under § 1404(a) was denied.[1]

At a pretrial conference in 1969 the case was fully reviewed before the District Judge. He recommended settlement in the amount of $180,000 and the parties agreed to settle for that sum. Judgment was entered on March 19, 1970, in favor of Campbell against United States Lines and was later marked "satisfied of record." A release was executed by the plaintiff.

The action for contribution or indemnity against the United States under the Federal Tort Claims Act was filed in this Court on September 17, 1971. The plaintiff has moved to strike the four defenses pleaded by the Government, namely, (1) failure to state a claim for relief; (2) lack of venue; (3) bar of the statute of limitations and (4) the contention that the release signed by Campbell included the United States by reason of the inclusion among released persons of "United States Department of Commerce Maritime Administration."

The motions have been orally argued and briefed. The matter of venue, the statute of limitations and the question of the release can be readily disposed of.

■ The venue of actions under the Tort Claims statute is "where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C.A. § 1402(b). The alleged negligence by the government physicians took place at Savannah.

■ Provided there exists a right to contribution or indemnity, the applicable two-year statute of limitations (28 U.S.C.A. § 2401(b)) does not run from the date of injury but from the time the right to contribution or indemnity accrued, namely, date of payment to the seaman which was in March, 1970. See 54 C.J.S. Limitations of Actions § 160; Kantlehner v. United States, D.C., 279 F.Supp. 122; Keleket X-Ray Corporation v. United States, 107 U.S.App.D.C. 138, 275 F.2d 167; States Steamship Company v. American Smelting & Refining Company, 339 F.2d 66 (9 Cir.).

■■ The release executed by Campbell named the United States Department of Commerce Maritime Commission as a releasee. It is contended by the government that the inclusion of that agency results in the release of the United States, as principal. The Georgia rule that the release of one tortfeasor is a release as to all does not extend to a physi-

---

[1]. The plaintiff took the position that there was no malpractice. In any event, the absolute imposed on a shipowner to provide medical care for a seaman injured in the service of the ship imputes to the owner of a vessel negligence and mal-

practice by government physicians. See Fitzgerald v. A. L. Burbank & Co., 451 F.2d 670 (2 Cir.); Central Gulf Steamship Corp. v. Sambula, 405 F.2d 291 (5 Cir.).

cian who is negligent in the subsequent treatment of the injury, at least in the absence of intent of the parties. Knight v. Lowery, 228 Ga. 452, 185 S.E.2d 915. The Maritime Commission had nothing to do with the malpractice aspect of the case. The release of that agency does not operate to release the United States for the negligence of the Public Health Service, Department of Health, Education, and Welfare and its physicians and agents. Neither the Commission, the Public Health Service nor the United States contributed to the settlement.

The motion to strike the Second, Third and Fourth defenses is granted.

The First Defense, that is, failure to state a claim on which relief can be granted, is an entirely different matter. The motion presents exceedingly difficult problems. The government contends that there is no right to contribution since United States Lines and the Public Health Service and physicians were not joint tortfeasors. It urges that there is no basis for indemnity. If subrogation is involved, it argues that the assignee of the malpractice claim takes same subject to all defenses, including the bar of the statute of limitations.

■ The right to indemnity or contribution under the Federal Tort Claims Act is governed by state law. 28 U.S.C.A. §§ 1346(b), 2674; Traveler's Insurance Company v. United States, D.C., 283

F.Supp. 14, 19; Williams v. United States, 352 F.2d 477 (5 Cir.); Elliott v. United States, D.C., 329 F.Supp. 621.

■ If this were a case of joint tortfeasorship, United States Lines would seem, under Georgia law, to be entitled to partial contribution provided its proof substantiated the claim as to malpractice by the Public Health Service.[2] The consent judgment in Pennsylvania has the same effect as an involuntary judgment (Estes v. Estes, 192 Ga. 94, 96, 14 S.E. 2d 681; Reynolds v. Southern Railway Company, D.C., 320 F.Supp. 1141, 1144).[3] It probably satisfies the recent rulings by the Court of Appeals of Georgia to the effect that the right of contribution under Ga.Code Ann. § 105–2012 requires a judgment being obtained against the person seeking contribution from one who may be jointly liable. Hangar Cab Company, Inc. v. City of Atlanta et al., 122 Ga.App. 661, 178 S.E.2d 292; Hospital Authority of Emanuel County v. Gray, 123 Ga.App. 415, 181 S.E.2d 299. See also Thornhill v. Bullock, 118 Ga.App. 186, 188, 162 S.E.2d 886; Southern Nitrogen Company v. Stevens Shipping Company, 114 Ga.App. 581, 151 S.E.2d 916. *Cf.* Reynolds v. Southern Railway Company, *supra.*

United States Lines relies heavily on Penn Tanker Company v. United States, 409 F.2d 514, a Fifth Circuit case from Texas. The facts are strikingly similar

2. See in respect to contribution among tortfeasors, Advanced Refrigeration, Inc. v. United Motors Service, Inc., 69 Ga. App. 783, 26 S.E.2d 789; Central of Georgia Railway Company v. Macon Railway & Light Company, 140 Ga. 309, 78 S.E. 931; Central of Georgia Railway Company v. Swift & Company, 23 Ga. App. 346, 98 S.E. 256; Central of Georgia Railway Co. v. Macon Railway & Light Company, 9 Ga.App. 628, 71 S.E. 1076.

3. In Peacock Construction Company v. Montgomery Elevator Company et al., 121 Ga.App. 711, 712, 175 S.E.2d 116, there was a consent judgment in the main case. Counsel for the two parties stipulated that it was "to be considered as though after full trial before a jury".

The question as to its effect arose in the third-party action for indemnity and contribution. The Court said: "From the record before this court in support of the consent verdict and judgment we consider it impossible to determine, as a matter of law, which alleged acts of negligence are to be regarded as the proximate cause of the plaintiff's injuries, or whether this negligence is directly attributable to Peacock, or attributable jointly to Peacock and Elevator Maintenance, or a combination of the negative conduct of Peacock and the positive conduct of Elevator Maintenance. The verdict and judgment merely represent a conclusive determination that Peacock was negligent in some manner alleged in violation of its responsibility as the occupier of premises to its invitee."

to those in the case now before this Court. In that case a seaman received an injury aboard ship. He was admitted to the United States Public Health Service in Galveston. As a result of malpractice by a government surgeon, he lost an eye. Litigation by the seaman against the shipowner in a Texas court resulted in a settlement and consent judgment. Thereafter, Penn Tanker sued the United States under the Federal Tort Claims Act for the amount it had paid to the plaintiff and 50% thereof was awarded as indemnity. The Fifth Circuit Court of Appeals held (p. 520):

> "There can be no doubt that Penn Tanker was under a legal obligation to pay Hodges and that the Government would have been liable to Hodges had he sued it. It is undisputed that Penn Tanker had no control or direction over Hodges (other than to furnish him with a Master's Certificate for treatment at a Service facility). Penn Tanker had no part in the selection of the hospital or the treating physician and was not even aware of Hodges' decision to submit to eye surgery. It had not the slightest opportunity to protect itself against the Government's negligence. A more equitable consideration could hardly be presented. Nor do we perceive any difficulty in the allocution of burdens between Penn Tanker and the Government whose liability is isolable. Of course, Penn Tanker cannot pass on its liability for damages to Hodges which would have occurred without the maltreatment by the Service facility's doctor or, conversely, the Government cannot be liable to Penn Tanker for more damages than would have been assessed against it in a direct suit by Hodges . . . ."

The Court further said (p. 520) that when Penn Tanker paid the injured seaman damages for which it was liable even though resulting from the negligent aggravation of the injury during medical treatment "it became an assignee by operation of law".

While *Penn Tanker* is persuasive, Georgia law controls. Under it, I conceive that the right of contribution is not applicable for the reason that the United States Public Health Service and the shipowner were not joint tortfeasors. The parties did not act in concert so as to produce a single injury. There were two separate, non-concurrent wrongs, the injury received aboard ship at sea and the alleged aggravation by government physicians in the treatment thereof. Neither of the parties to this suit had anything to do with *both* torts. In Knight v. Lowery, *supra*, injuries were received in an automobile accident and there was a settlement by the injured person with the other. The release covered the responsible party "and all other persons." The claimant then sued his attending surgeon for negligence in the treatment of his injuries. The latter pleaded the release as a bar. In denying that defense the Supreme Court of Georgia said (228 Ga. p. 455, 185 S.E.2d p. 918):

> "Here, the physician and the driver of the automobile did not act in concert to produce a single injury, and they are not joint tortfeasors. Rather, we conclude that they are successsive tortfeasors, and that Dr. Lowery's alleged negligence, while contributing to the overall damage, was subsequent to the original injury and created in favor of the injured party a separate cause of action against him."

"The few cases considering the question appear to be in agreement that a tortfeasor originally causing an injury and a physician that subsequently aggravates it or cause a new injury in the course of treatment are not in any sense of the term joint tortfeasors, and that the physician is not liable to the original tortfeasor under any theory of contribution." 8 A.L.R.3d 644. See Herrero v. Atkinson, 227 Cal.App.2d 69, 38 Cal. Rptr. 490; Derby v. Prewitt, 12 N.Y.2d 100, 105, 236 N.Y.S.2d 953, 187 N.E.2d 556; Kotler v. Monticello Hospital, 56 Misc.2d 742, 290 N.Y.S.2d 385.

I conclude that no traditional relation of joint tortfeasor existed and that an action for contribution is not maintain-

able under Georgia law. As a matter of fact, counsel for the plaintiff relies to a much greater degree on the theory of implied indemnity. It argues that the right thereto may be non-contractual and exists when one discharges a duty which, as between him and the indemnitor, should have been discharged by another. 41 Am.Jur.2d, Indemnity, §§ 1, 2, 19. The shipowner argues that where a person is compelled to pay damages because of negligence imputed to him as a result of a tort committed by another, he may maintain an action over for indemnity against the latter. See Central of Georgia Railway Co. v. Macon Railway & Light Co. (Ct. of Appeals), *supra*; Central of Georgia Railway Co. v. Macon Railway and Light Company (Supreme Ct.) *supra;* Southern Nitrogen Company v. Stevens Shipping Company, *supra.*

In McKee v. Southern Railway Company, 50 F.R.D. 502, 507 (N.D.Ga.) Judge Edenfield pointed out that indemnity is not dealt with in Ga.Code Ann. § 105–2012(1) and that an action seeking indemnity from a person primarily liable arises only when judgment has been entered against the one claiming to be secondarily liable. In the instant case there is a consent judgment against United States Lines which did not adjudicate anything in respect to aggravation of damages by malpractice. The judgment did no more than conclusively determine that the defendant in the admiralty case breached its duty to the seaman.

In Robert & Company Associates et al. v. Pinkerton & Laws Company et al., 120 Ga.App. 29, 169 S.E.2d 360 the third-party plaintiff had been sued as a result of damages resulting from the escape of water from a pumping station for which it prepared plans and specifications. After two mistrials Robert & Company settled out of court. There was no judgment. Asserting that it was legally liable and that the settlements were reasonable and made under compulsion of legal liability, the engineering firm then brought suit against the general contractor and a plumbing subcontractor. The claim against the former was based on an express contract to indemnify and hold Robert & Company harmless. The claim against the subcontractor was founded on the theory of implied indemnity. The Court of Appeals said that it did not regard Terrell v. Stevenson, 97 Ga. 570, 572, 25 S.E. 352 as meaning that "a judgment fixing legal liability is an absolute condition precedent where a contract of indemnity is involved, which by its terms does not fix liability in terms of an antecedent judgment." (120 Ga. App. p. 33, 169 S.E.2d p. 363). It reversed the grant of the motion to dismiss the general contractor and affirmed the dismissal of the claim over against the subcontractor. Judge Jordan said:

"While we distinguish the *Terrell* and *Southern Nitrogen* cases, *supra,* because of the actual contract of indemnity in the present case, we do consider the principles recognized in these cases as controlling to defeat an action over under an implied contract of indemnity, and thus support the action of the trial court in respect to Murphey, because it is manifestly clear from the petition that Robert & Company, in settling the claim against it did not act under the compulsion of a judgment fixing actual legal liability, and which, in relation to Pinkerton and Murphey, is of a vicarious nature, thereby affording Robert & Company, as the defendant in that action, the basis for a claim against the true tortfeasor or tortfeasors."

Atlanta Milling Company v. Norris Grain Company, 271 F.2d 453 was a diversity case that went to the Fifth Circuit from the Northern District of Georgia. The District Court found that the Georgia statute governing recovery of "voluntary payments" (Ga.Code Ann. § 20–1007) precluded an action for indemnity or subrogation where a chicken feed manufacturer purchased deleterious corn from a grain merchant with resulting damage to flocks of the milling company's customers. The grain merchant refused to investigate. The manufacturer thereupon made fair and reason-

able settlements with the owners of chickens and brought suit for the amount it paid.

The Fifth Circuit reversed under its conception of Georgia law. Since the grain merchant had refused to recognize its obligations, the milling company "had the right in the interest of both to make fair and reasonable settlements and to recover indemnity therefor." [4]

■ At the recent session of the General Assembly Ga.Code Ann. § 105–2012 was amended so as to confer the right of contribution without the necessity of judgment and it is not to be prejudiced by reason of compromise and settlement. A similar piece of legislation was enacted as to necessity for a prior judgment in exercising the right of express or implied indemnity. See Georgia Laws, 1972, pp. 132–133, 134. Since the statutes affect substantive rights they must operate prospectively (F. H. Ross & Company v. White, 224 Ga. 324, 325, 161 S.E.2d 857) and do not create a right to recover if one were not in existence before the legislation was enacted.

■ I have decided to follow the reasoning of the Court of Appeals of Georgia in *Robert & Company, supra.* In dealing with the claim for indemnity against a subcontractor which had not expressly agreed to indemnify the Court said that there was no right over by Robert & Company after making the settlement since it "did not act under the compulsion of a judgment fixing actual legal liability". In the present case I think United States Lines acted under compulsion of a judgment adjudicating it to be liable for the injuries and that they necessarily included aggravation of the original injury through any malpractice of the government physicians.[5]

Did the settlement of the claim against plaintiff include damages resulting from aggravation by maltreatment? If so, what is the reasonable amount thereof? Was the United States negligent in the medical treatment? If so, what is the proper allocation of the burdens between the government and United States Lines, bearing in mind that the latter cannot pass on is liability to the United States for damages which occurred irrespective of maltreatment? See *Penn Tanker Company, supra,* 409 F.2d 520. All of these and perhaps other questions of fact exist in the case.

I add a few words as to subrogation. The government contends that this is a case of subrogation and not one of implied indemnity and that if any part of the settlement included the aggravation of the injury as a result of malpractice, the subrogated right of the shipowner against the United States is subject to the defense of the bar of the two-year statute of limitations. See 50 Am.Jur. Subrogation § 134.

"Where the injured person does not have a cause of action against the wrongdoer, the person making compensation for the injury has nothing to which to be subrogated." 83 C.J.S. Subrogation § 16; Southern Nitrogen Company v. Stevens Shipping Company, *supra,* 114 Ga.App. p. 586, 151 S.E.2d 916. Campbell never contended that there was any malpractice. The release does not mention the subject. There was no written assignment of such claim. I suppose, however, that what a seaman thinks about the merits of separate action he may have against negligent physicians is immaterial to the transfer of any such right as a consequence of the settlement of his claim with the shipowner.

---

4. The Circuit Court does not seem to have considered that there was an implied warranty to the milling company as to the quality of the corn. The failure to expressly allege the existence of an implied warranty was apparently the determining factor in Southern Nitrogen Company v. Stevens Shipping Company, *supra,* where no judgment was obtained against the party seeking indemnity or contribution. See 114 Ga.App. p. 585, 151 S.E. 2d 916.

5. It will be recalled that at a pretrial conference in the Pennsylvania case the District Judge in recommending settlement expressed the view that there was a potential jury verdict of $225,000 or more.

It is extremely difficult to tell legal subrogation and implied indemnity apart. They are closely related and "oftentimes the possessor of one right is also the possessor of the other." 42 C. J.S. Indemnity § 3; Newsum v. Pennsylvania R. Co., D.C., 79 F.Supp. 225. In their outer bounds the difference between them is about that between cherubim and seraphim in the angelic orders. It is not necessary to decide the subrogation issue. Since I have ruled that a claim for relief is stated under the theory of implied indemnity, what difference does it make if United States Lines also possesses a right of action based on subrogation? The latter claim is without the statute of limitations; the former is within it. The plaintiff is still in court no matter how you look at it.

The motion to strike the First Defense is granted.

This April 21st, 1972.

/s/ Alexander A. Lawrence
Chief Judge, United States
District Court Southern
District of Georgia