## 38335. WILLIAMS v. PHYSICIANS & SURGEONS COMMUNITY HOSPITAL, INC.

SMITH, Justice.

We granted certiorari to consider the extent to which a general release executed in settlement of a pending lawsuit against an original tortfeasor inures to the benefit of a successive tortfeasor. The Court of Appeals held that under our case of *Maxey v. Hospital Authority,* 245 Ga. 480 (265 SE2d 779) (1980), the claim of appellant, Sarah Williams, against appellee, Physicians and Surgeons Hospital, is barred. We reverse.

On August 2, 1976, Mrs. Williams sustained foot injuries when her automobile was struck by a car driven by Earline B. Anthony. Some fifteen months later, while a suit against Mrs. Anthony was pending, Mrs. Williams entered Physicians and Surgeons Hospital for treatment of nagging pain and swelling connected with the accident. Soon afterwards, appellant settled her claim against Mrs. Anthony, executing a general release in favor of the tortfeasor, her insurance company, and *"all other persons,* firms, and corporations" (Emphasis supplied). The release signed by Mrs. Williams was a standard, preprinted form with blank spaces in which the parties to the release inserted their names, the date of the accident, a brief description of the accident, and the amount of the settlement. The release did not mention appellee Physicians and Surgeons Community Hospital.

Following execution of the release, Mrs. Williams sued the hospital, claiming that her foot was injured as a result of infection due

to appellee's negligent treatment of her injuries. The hospital moved for summary judgment on the ground that the general release in favor of Mrs. Anthony, the original tortfeasor, operated as a bar to any subsequent suit against the hospital for aggravation of Mrs. Williams' injuries. The trial court denied the motion.

The Court of Appeals granted an interlocutory appeal and reversed. *Physicians &c. Hospital v. Williams,* 160 Ga. App. 243 (286 SE2d 751) (1981). The court emphasized that, under our decision in *Maxey v. Hospital Authority,* supra, it was bound by the "clear and unambiguous" language of the document releasing "all persons," including the hospital, from liability. We reverse.

A general release is "one that releases the alleged tortfeasor from liability for all claims arising out of an occurrence . . ." *Glover v. Southern Bell Tel. &c. Co.,* 229 Ga. 874, 875 (195 SE2d 11) (1972). In *Knight v. Lowery,* 228 Ga. 452 (185 SE2d 915) (1971), this court for the first time held that a release of one tortfeasor was not effective as a release of a successive tortfeasor unless (a) all damages, including those caused by the successive tortfeasor, are paid in full, or (b) the parties to the release intended to release both tortfeasors.[1] Id. at 456. This position was reaffirmed in *Maxey v. Hospital Authority,* supra. The release in *Maxey,* however, was held to be "clear and unambiguous" in its application to "all the world," including the alleged successive tortfeasor; and *Knight v. Lowery* was overruled to the extent that it held that parol evidence is always admissible against a stranger to the release "to ascertain the true intention of the parties with regard to those persons who were to be bound or covered by the release." 228 Ga. at 457.

We are in full accord with the rule established in *Knight v. Lowery* that release of one tortfeasor releases a successive tortfeasor only if the parties to the release intended to release both tortfeasors. Our decision there was but a specific application of the broader principle that ". . . a plaintiff should never be compelled to surrender his cause of action against any wrongdoer unless he has intentionally done so, or unless he has received such full compensation that he is no longer entitled to maintain it." Prosser, Law of Torts 304 (4th ed. 1971). This rule has particular force in a successive tortfeasor case such as this one. Here the defendant hospital claims immunity from liability under the release; but the hospital was not a party to the

---

[1] The court in *Knight v. Lowery* carefully distinguished this situation from one involving joint tortfeasors. In the latter case, the rule in Georgia is that release of one joint tortfeasor releases the others as well. 228 Ga. at 455. As in *Lowery,* the present case involves successive, not joint tortfeasors.

release, did not contribute to the settlement of the original claim, and did not rely on the terms of the release. See Couillard v. Charles T. Miller Hospital, Inc., 253 Minn. 418 (92 NW2d 96 (1958); Scheideler v. Elias, 309 NW2d 67 (Neb. Sup. Ct. 1981); Daily v. Somberg, 146 A2d 676 (N. J. Sup. Ct. 1958); Thornton v. Charleston Area Medical Ctr., 213 SE2d 102 (W. Va. Sup. Ct. 1975).

The central rationale of the many decisions, including *Knight v. Lowery,* which have adopted the so-called "modern rule" regarding the effect of a release on the liability of a successive tortfeasor is that courts should look to the real intention of the parties to a general release rather than relying on an artificial conclusive presumption of law based on general, boilerplate language contained in the release. See Annot., 39 ALR3d 260, 281-83 (1971). Consequently, all courts which have adopted the modern view allow the parties to the release to introduce parol evidence of their intent at the time of execution of the release. Id.[2]

Georgia is the lone exception. Because of our decision in *Maxey v. Hospital Authority,* supra, a plaintiff who executes a general release to an original tortfeasor then sues the treating physician or hospital for aggravation of the preexisting injuries is bound by the language, however general, of the release. We can no longer adhere to this harsh rule.

We therefore hold that, where a non-party to a general release claims coverage thereunder, parol evidence is admissible as an aid in explaining the intention of the parties to the release. This result is, we believe, more consistent with the usual intentions and expectations of the parties to a general release. Normally, negotiation and settlement of a tort claim will focus on the accident from which the claim arises. Little, if any, thought is given to later events such as possible aggravation of the original injury by a third-party tortfeasor. This is particularly true where the aggravating event occurs months, or even years, after the original accident. The facts of this case provide a ready illustration. We think it extremely unlikely that when she executed a release to Mrs. Anthony and "all other persons," Mrs. Williams intended to release a hospital whose treatment aggravated her foot injury nearly fifteen months after the automobile accident. Perhaps she did; our only point is that the parties should be allowed to present proof outside of the document itself on this vital question

---

[2] But see Young v. State, 455 P2d 889 (Alaska Sup. Ct. 1969), and McMillen v. Klingensmith, 467 SW2d 193 (Tex. Sup. Ct. 1971), which appear to erect an irrebuttable presumption of noncoverage as to parties not specifically named in the release.

of intent.

The form of the usual release document itself supports such an interpretation. The release executed by Mrs. Williams was on a standard, preprinted form which the parties completed by filling in the date and time of the accident in question. In an analogous area, this court has held that where a contract is partly printed and partly handwritten or typed, the written or typed portions are to be given greater weight in construing the parties' intent. *Stanley v. Greenfield,* 207 Ga. 390 (61 SE2d 818) (1950); *Shackelford v. Fitzgerald,* 151 Ga. 35, 39 (105 SE 597) (1920). See also McDaniel v. Ga. Consol. Contracting Co., 110 FSupp. 751 (S. D. Ga. 1952.) (applying Georgia law). The contents of the typed portions of the release in this case indicate that the parties to the release were primarily concerned with the original accident, not a subsequent aggravation of the plaintiff's injuries by one not a party to the release.

Furthermore, we believe that a rule requiring strict adherence to the terms of a preprinted release form is unfair to laymen who may be unknowledgeable or not represented by an attorney during negotiation and execution of the release. By absolutely freeing potential successive tortfeasors from liability, such a rule may unjustly benefit parties who have caused severe injury through unskilled medical treatment or negligent hospital care. See Thornton v. Charleston Area Medical Ctr., supra, at 108.

For these reasons, we think that a successive tortfeasor who is not named in a general release should not be allowed to insulate himself from liability merely by invoking the words "all other persons" or similar general language contained in the release. Parol evidence is therefore admissible "to ascertain the true intention of the parties [to the release] with regard to those persons who were to be bound or covered by the release." *Knight v. Lowery,* supra, at 457. Our inquiry does not end here, however. We must also decide how to allocate the burden of proving coverage under the release.

In *Knight v. Lowery,* we held that since a general release prima facie releases all the world, the plaintiff has the burden of proving that the successive tortfeasor was not included in the release. 228 Ga. at 457. Given the foregoing analysis, however, we think that the party claiming coverage under the release should bear the burden of proof on that issue. "[T]he alleged wrongdoers, who were not parties to the release and have made no payments towards satisfaction of the plaintiff's injuries, may fairly be called upon to show that the release was intended to discharge them or that the plaintiff has received full compensation." Daily v. Somberg, 146 A2d 676, supra, 684. On remand, therefore, the appellee hospital must prove that the release

applies to it. We agree with the courts which have held that this rule more closely reflects the natural understanding of most persons when they execute a general release. See Young v. State, 455 P2d 889, 893 (Alaska Sup. Ct. 1969); Summey v. Lacy, 588 P2d 892, 894 (Colo. App. 1978); Fieser v. St. Francis Hospital, 212 Kan. 35 (510 P2d 145, 151) (1973); Missouri v. Crandall, 581 SW2d 829 (Mo. Sup. Ct. 1979); Daily v. Somberg, supra; Rock v. Reed-Prentice Div. of Package Machinery Co., 346 NE2d 520 (N.Y. App. 1976); McMillen v. Klingensmith, 467 SW2d 193 (Tex. Sup. Ct. 1971); Callan v. O'Neil, 578 P2d 890, 892 (Wash. App. 1978); Krenz v. Medical Protective Co., 204 NW2d 663, 670 (Wisc. Sup. Ct. 1973); Harris v. Grizzle, 599 P2d 580, 586 (Wyo. Sup. Ct. 1979).

Under the rule established by the present case, therefore, a successive tortfeasor does not come within the coverage of a general release unless (a) the plaintiff has been fully compensated for his loss, including aggravation; or (b) the parties to the release intended to release the party claiming coverage under the release. Unless a party is specifically named or identified in a release, he is presumed not to be covered by the release. The burden of proving coverage under the release is on the party asserting that he is covered by the release. To the extent that *Maxey v. Hospital Authority* and *Knight v. Lowery* conflict with the views expressed in this opinion, those decisions are hereby overruled.

We note that, under our analysis, the two controlling factors in determining whether a general release extends to a successive tortfeasor — the actual compensation paid to the plaintiff and the intent of the parties to the release — are factual questions which are normally properly resolved by the trier of fact. If, on remand, genuine issues of material fact exist as to these two questions, summary judgment would, of course, be improper. See Code Ann. § 81A-156.

The judgment of the Court of Appeals in *Williams v. Physicians &c. Hospital* is reversed. The case is remanded for further proceedings consistent with this opinion.

*Judgment reversed with direction. All the Justices concur, except Clarke, J., who concurs specially, and Jordan, C. J., and Marshall, J., who dissent.*

DECIDED JUNE 30, 1982.

*Hatcher, Dorsey, Irvin & Pressley, Jerry B. Hatcher,* for appellant.

*David M. Brown, William W. Gardner,* for appellee.

CLARKE, Justice, concurring specially.

I concur with the judgment of the majority because of the remoteness of the original injury to the subsequent injury.

In my view *Maxey v. Hospital Authority,* supra, states a proper rule of law, but I would distinguish it from this case. The holding in *Maxey* was predicated upon the unambiguous language of release as it related to the parties who were released. In *Maxey,* the released parties were those named in the release plus "all the world." In the case before us there is a similar absence of ambiguity as to the parties released in that the form makes reference to the named parties and "all other persons, firms and corporations."

I do not believe, however, that the release in this instance is so unambiguous as to the event from which a claim might arise as to prohibit the offering of parol evidence concerning intent. The claims released here are those which are "resulting or to result, or sustained or received by me . . ." through the automobile accident. The passage of time between the automobile wreck and the surgery complained of, taken together with the independence of the two events and the difference in their effects, raises a question in my mind as to whether the result of the surgery was also the result of the automobile accident.

For the reasons stated, it is my opinion that parol evidence should be admitted to explain the intent of the parties in executing the release agreement.