**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS, P. J., and RAY, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 16, 2016**

# In the Court of Appeals of Georgia

A16A1449. OTS, INC. et al. v. WEINSTOCK & SCAVO, P. C. et   DO-053
al.

A16A1450. WEINSTOCK & SCAVO, P. C. et al. v. OTS, INC. et   DO-054
al.

DOYLE, Chief Judge.

This appeal arises from a legal malpractice suit filed by OTS, Inc.,[1] ("OTS")

and Charlton Lester (collectively with OTS, "the plaintiffs") against Weinstock &

Scavo, P. C., ("W&S") and Louis Cohan (collectively with W&S, "the defendants")

with regard to the defendants' representation of the plaintiffs in a sexual harassment

lawsuit. The defendants counterclaimed for breach of a note and failure to pay

attorney fees arising from the sexual harassment suit. After a trial, the jury returned

---

[1] OTS operated under the names Omni Tech Solutions and OmniTech Institute.

a verdict on the legal malpractice claim in favor of the defendants, but found in favor of the plaintiffs with regard to the counterclaims.

In Case No. A16A1449, the plaintiffs appeal, arguing that the trial court erred by ruling (1) that OTS could not recover attorney fees, (2) that OTS could not assert claims of breach of fiduciary duty and breach of duty of good faith and fair dealing in addition to claims of malpractice, (3) that Lester released his claims by signing a promissory note, and (4) that W&S's liability was derivative of Cohan's; and (5) they argue that the trial court abused its discretion by excluding expert witness testimony. In Case No. A16A1450, the defendants argue that the trial court erred (1) by denying summary judgment to them on their counterclaim against Lester; (2) by denying summary judgment on their counterclaim against OTS based on the release provision contained in the promissory note; and (3) by denying their claims for attorney fees and costs under OCGA § 9-11-68. For the reasons that follow, we affirm the judgment in part, reverse the judgment in part, and vacate the order on attorney fees, remanding the case for further proceedings consistent with this opinion.

Viewed in the light most favorable to the verdict,[2] the record shows that Lester is the founder and president of OTS, and in March 2007, OTS hired Candace Terrell to fill an administrative position in its business office. The plaintiffs contend that Terrell was reprimanded for poor performance and eventually moved to OTS's financial aid office, where she received poor performance reviews. The financial aid office supervisor, Renee Alston, recommended that Terrell be fired, and on June 4, 2007, OTS terminated Terrell.

*Harassment Lawsuit*

In September 2007, Terrell filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), which issued a right-to-sue letter in December 2008, at which point Terrell sued Lester for assault and battery under Georgia law and sued OTS in the U.S. District Court for the Northern District of Georgia in March 2009 for sexual harassment and retaliation under Title VII of the federal Civil Rights Act, 42 USC §§ 2000e-2 and 2000e-3, and for negligently

___

[2] See *Allstate Indem. Co. v. Payton*, 289 Ga. App. 202, 203 (656 SE2d 554) (2008).

supervising and retaining Lester.[3] Terrell's case proceeded to trial on the battery and

negligent supervision/retention claims.[4]

While the case against Lester and OTS was pending in the district court,

Terrell's attorneys noticed Cohen as a fact witness based on the many years he had

spent as OTS's and Lester's employment attorney. Based on the possibility of Cohen

being conflicted out of representing Lester and OTS at trial, the plaintiffs terminated

Cohen's representation approximately two weeks prior to trial,[5] and Lester and OTS

hired McGuire Woods, LLP, which represented them from March 10, 2011, through

trial.

During the sexual-harassment trial, five other OTS employees testified to being

harassed directly by Lester.[6] The jury found in favor of Terrell, awarding $100,000

---

[3] See *Terrell v. OTS, Inc.*, Case No. 1:09-CV-00626-RWS (N.D. Ga. 2009). Terrell also filed a similar case in state law during the pendency of her discrimination charge with the EEOC.

[4] The district court granted a directed verdict on Terrell's Title VII claims on the ground that OTS had fewer than 15 employees. See id. See also 42 USC § 2000e (b).

[5] W&S formally withdrew in June 2011.

[6] See *Terrell v. OTS, Inc.*, 470 Fed. Appx. 845 (11th Cir. 2012) (non-published opinion in Case No. 11-13105).

against Lester on her battery claim and $200,000 against OTS for negligently supervising and retaining Lester.[7] After the district court denied Lester's and OTS's motions for a new trial and for judgment as a matter of law, they appealed to the U.S. Court of Appeals for the Eleventh Circuit, which affirmed the judgment in a non-published opinion issued May 4, 2012, in Case No. 11-13105.[8]

*Malpractice Action*

As a result of the Terrell litigation, in September 2011, the plaintiffs filed the instant legal malpractice action against the defendants, alleging ten instances of professional malpractice during the investigation and litigation, breach of fiduciary duty, and breach of good faith and fair dealing, and requesting punitive damages, attorney fees, and costs of litigation. Attached to the complaint was a copy of Terrell's acknowledgment that she would arbitrate all claims against OTS and the affidavit of attorney Peter Spanos.

On November 2, 2011, the defendants answered and moved to dismiss the complaint, contending that the plaintiffs had failed to state a claim in their complaint because they could not establish causation for any injury based on the defendants'

---

[7] See id.

[8] See id. at 846.

5

actions — instead contending that the outcome of the harassment trial was the result of the plaintiffs' own wrongdoing.

On February 24, 2012, the trial court issued an order granting in part and denying in part the defendants' motion to dismiss. In its lengthy order, the trial court parsed through the ten instances of alleged malpractice contained in the complaint and dismissed those for which the court found there could be no showing under any provable set of facts that the defendants' actions in the Terrell matter resulted in harm to the plaintiffs. Specifically, the trial court dismissed the plaintiffs' claim that they suffered harm as a result of the defendants' failure to force Terrell to arbitrate her claims as stated in the employee handbook, finding that the claim was too speculative.

The defendants also moved for summary judgment, contending that the plaintiffs had waived their claims against the defendants by executing a promissory note in relation to outstanding legal fees, which note contained a waiver of claims provision. In support of their motion for summary judgment, the defendants filed the affidavit of W&S's partner Tom Bartolozzi, who stated that (after the malpractice suit had been filed) on October 3, 2011, Lester signed a promissory note to establish a plan to pay outstanding fees owed to W&S for representation of the plaintiffs in the Terrell matter. The note contained the principal sum of $56,522.17, payable in 18

$3,000 payments followed by a final payment of $2,552.17. The waiver provision stated that

> Maker [earlier defined as Lester] and Holder agree that this Note is being executed by Maker in Compromise of certain amounts due and owing to Holder, and in consideration of the foregoing and together with all other good and valuable consideration, by execution hereinbelow, except for claims of Holder arising out of this Note, Maker and Holder on behalf of themselves and their respective parents, affiliates, successors, assigns, agents and employees hereby waive and release the other party and their respective parents, affiliates, successors, assigns, agents and employees from and against any and all claims, rights, demands, obligations and liabilities and causes of action, known or unknown of whatever kind and however arising, which either party now has, ever has had, from the beginning of time through the date of this Note.

The note did not define "Maker" as OTS nor did it name OTS as a party to the note. Under Lester's signature, he printed his title as "Founder." Of the eight $3,000 payments made, five were drawn from OTS's account and three from Lester's account. The defendants maintained that Lester's inclusion of the title "Founder" established that he was executing the note on behalf of himself individually and on behalf of OTS as he was authorized to do. The defendants also argued that the

payments were drawn from both Lester's and OTS's accounts, which established that both parties ratified the note and thereby the waiver of rights clause.

On July 2, 2012, the trial court issued an order on the defendants' motion for summary judgment on the basis that the defendants had waived their rights to pursue the claims by executing the promissory note in October 2011. The trial court granted the motion as to Lester, finding that he was the only party included in the note and that his signature or the inclusion of the title "Founder" was insufficient to establish that he was binding both himself and OTS. The trial court also found that OTS was not made a party to the note simply because payments on the note were drawn on OTS's account. Thus, the trial court denied the motion as to OTS, allowing it to pursue the remaining allegations of the complaint.

Meanwhile, on March 1, 2012, the trial court issued a scheduling order directing the plaintiffs to disclose "the names and opinions of the . . . expert witnesses . . . no later than August 31, 2012." The court explained that "[t]he disclosures shall include the names, subject matters, substance of facts and opinions, and a summary of the grounds for each opinion with respect to which any expert is expected to testify at trial on issues to which the party bears the burden of proof." Citing *Hart v.*

*Northside Hospital*,[9] the court explained that "failure to abide by the deadlines set out . . . may include . . . exclusion of evidence."

On August 23, 2012, the defendants filed an amended answer with two counterclaims, contending that the plaintiffs had failed to make any payment on the remaining $32,552.17 in past due fees after March 2012, which resulted in Lester being in breach of the note and OTS being jointly liable for those fees even if it was not a party to the note.

On September 20, 2012,[10] the defendants filed an emergency motion to exclude certain testimony by Spanos that had not been proffered to OTS until September 19, 2012, after the expiration of the August 31, 2012 deadline set forth in the trial court's scheduling order. Alternatively, the defendants asked the trial court to extend discovery to allow them to investigate the new opinions of Spanos that were not proffered in his affidavit, which opined only that the defendants breached the standard of care by failing to disclose Cohen's potential conflict as a fact witness. OTS's supplemental responses to defendants' first continuing interrogatories

---

[9] 291 Ga. App. 208, 209 n.9 (661 SE2d 576) (2008).

[10] Discovery did not close until October 31, 2012.

expanded the discrete instances of alleged malpractice about which Spanos would testify to include each of the remaining malpractice claims.

OTS responded that it believed Spanos's initial affidavit and notification of their intent to call him to testify regarding breach of the standard of care was sufficient to fulfill the scheduling order. Moreover, OTS argued that it provided its supplemental responses to the first continuing interrogatories within the 15-day time period for providing supplemental discovery under the trial court's order.

On September 25, 2012, the trial court issued an order granting the defendants' emergency motion to exclude Spanos's testimony on issues beyond those outlined in his affidavit provided with the complaint. The court found that the plaintiffs' original disclosures regarding Spanos's testimony did not fulfill the trial court's requirement as stated in the scheduling order that all "subject matters, substance of facts and opinions, and a summary of the grounds for each opinion" of each expert be disclosed by a date certain. The trial court also found that it had explicitly warned the parties that failure to abide by the order could result in exclusion of evidence, and thus, it granted the defendants' motion to exclude.

The defendants filed a second motion for summary judgment based on their counterclaims and OTS's remaining claims. On February 27, 2013, the trial court

issued an order denying in part the defendants' second motion for summary judgment to the extent that OTS's claims were based on the expert testimony proffered by Spanos prior to the closing of discovery and granting in part the motion as it related to OTS's remaining claims based on Spanos's excluded expert testimony. The trial court also denied the motion with regard to the defendants' counterclaims against Lester and OTS, finding that OTS was permitted to withhold attorney fees during the pendency of its malpractice action and that Lester's liability for the fees hinged on the jury's determination of the malpractice claims.

On March 21, 2013, the defendants served an offer of judgment pursuant to OCGA § 9-11-68 in the amount of $10,000 to settle the remaining malpractice claims. OTS did not respond, and a jury trial was held from May 6, 2013, to May 10, 2013; thereafter, the jury returned a verdict in favor of the defendants on OTS's malpractice claims and a verdict in favor of the plaintiffs on the defendants' counterclaims, awarding the plaintiffs $0.

On June 6, 2013, the defendants filed a motion for attorney fees of $112,996 and expenses in the amount of $4,996.10 under OCGA § 9-11-68. In an order entered on August 12, 2013, the trial court denied the motion, finding that the offer was not made in good faith.

To prevail on a legal malpractice claim, a client must prove that (1) he employed the defendant attorney; (2) the attorney failed to exercise ordinary care, skill, and diligence; and (3) this failure was the proximate cause of damages to the client. To establish proximate cause, the client must show that but for the attorney's error, the outcome would have been different; any lesser requirement would invite speculation and conjecture. The defendant attorney is entitled to summary judgment if he shows that there is an absence of proof adduced by the client on the issue of proximate cause. [11]

1. First, OTS contends that the trial court erred by finding that it could not recover attorney fees for the defendants' failure to force Terrell to arbitrate her claims.

In its February 24, 2012 order granting in part the defendants' motion to dismiss, the trial court determined that of the plaintiffs' alleged instances of malpractice, the plaintiffs' claim for damages based on the defendants' failure to compel arbitration failed to state a claim because the questions of whether an arbitrator would have found in the plaintiffs' favor or whether arbitration would have resulted in fewer fees and expenses were too speculative.

---

[11] (Punctuation omitted.) *Millsaps v. Kaufold*, 288 Ga. App. 44, 44-45 (653 SE2d 344) (2007).

OTS argues that the trial court erred by dismissing this claim, but the plaintiffs mischaracterize the basis upon which the trial court granted the motion. In its order, the trial court relied on this Court's opinion in *Houston v. Surrett*,[12] affirming the grant of summary judgment in a legal malpractice case based in part on the attorney's failure to pursue a change of venue because the issue of whether the transferee court would have acted more favorably toward the plaintiff was too speculative to support the claim.[13] Although that case was decided at a different procedural posture, the trial court correctly granted the motion to dismiss based on the speculative nature of this specific allegation of malpractice. OTS fails to cite relevant authority to counter the trial court's finding that there was no set of circumstances under which it could prove that it incurred additional fees or the judgment against it based on a failure by the defendants to attempt to compel arbitration. Accordingly, this enumeration is without merit.

2. Next, OTS argues that the trial court abused its discretion by excluding Spanos's expert witness testimony.

---

[12] 222 Ga. App. 207, 210-211 (2) (474 SE2d 39) (1996).

[13] The trial court subsequently clarified this ruling in its February 27, 2013 order on the defendants' second motion for summary judgment.

Trial judges have broad discretion in controlling discovery, including imposition of sanctions, and appellate courts will not reverse a trial court's decision on such matters unless there has been a clear abuse of discretion. This policy is peculiarly applicable in the context of allegations of discovery abuse. Historically, it has been the policy of the Georgia appellate courts to refuse to interfere with a trial court's exercise of its discretion in absence of abuse.[14]

Here, the trial court specified in its scheduling order that all "subject matters, substance of facts and opinions, and a summary of the grounds for each opinion" of every expert was due by a date certain, and OTS failed to comply with this order. The court warned the parties that exclusion of evidence was a possibility, and therefore, we discern no abuse of discretion.[15]

3. OTS contends that the trial court erred by determining that it could not assert claims of breach of fiduciary duty and breach of duty of good faith and fair dealing in addition to claims of malpractice. This claim is of no moment, however, as OTS fails to show how it was prevented from presenting evidence of any intentional

---

[14] (Punctuation and citations omitted.) *Collins v. Dickman*, 295 Ga. App. 601, 603 (1) (672 SE2d 433) (2008).

[15] See id.; *Moore v. Cottrell, Inc.*, 334 Ga. App. 791, 794 (2) (780 SE2d 442) (2015). Compare with *Hart*, 291 Ga. App. at 209 (1) (discovery failures may not be remedied by the exclusion of probative trial evidence).

14

conduct on the part of the defendants that constituted breaches of fiduciary duty or the duty of good faith and fair dealing, and the trial court instructed the jury on breach of fiduciary duty.

4. Lester argues that the trial court erred by finding that he released his claims by signing a promissory note.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review the grant of summary judgment de novo, construing the evidence in favor of the nonmovant."[16]

> The cardinal rule of contract construction is to ascertain the intention of the parties. Contract construction is a three-step process. Initially, the construction of the contract is a question of law for the court. First, if no ambiguity appears, the trial court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction. That is, where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. Secondly, if ambiguity does appear, the existence or non-existence of an ambiguity is itself a question of law for the court. Finally, a jury question arises only when there appears to be an ambiguity in the contract which cannot be negated by the court's application of the statutory rules of construction. This is true even if the

---

[16] (Citations and punctuation omitted.) *White v. Ga. Power Co.*, 265 Ga. App. 664, 664-665 (595 SE2d 353) (2004).

15

contract is difficult to construe. Further, a contract should be construed by examining the agreement in its entirety, and not merely by examining isolated clauses and provisions thereof.[17]

In its July 2, 2012 order, the trial court found that Lester had waived his claims against the defendants by signing the promissory note, which contained a waiver of rights provision. We agree with the trial court. The waiver language in the note is clear, and therefore, the trial court was prohibited from going beyond the note to determine if there was mutual assent.[18]

Although Lester points to the Georgia Supreme Court's opinion in *Williams v. Physicians & Surgeons Community Hospital*,[19] to support his contention that the waiver clause was unenforceable because he did not intend to waive his pending malpractice claims by signing the note, his argument is not persuasive. *Williams* involved a general release between a tortfeasor and an injured party, who received a second injury during treatment for the first injury by a second tortfeasor. The question in *Williams* was whether the release language in the contract between the first

---

[17] (Punctuation and citations omitted.) *Duffett v. E&W Properties*, 208 Ga. App. 484, 486 (2) (430 SE2d 858) (1993).

[18] See id.

[19] 249 Ga. 588 (292 SE2d 705) (1982).

tortfeasor and the injured party served to release the successive tortfeasor from liability as well; such a factual scenario is inapplicable here.[20] Accordingly, the trial court did not err by dismissing Lester's claims based on the waiver of rights provision in the promissory note.

5. Finally, OTS maintains that the trial court erred by finding that W&S's liability was derivative of Cohan's. Specifically, in its order granting in part and denying in part the defendants' second motion for summary judgment, the trial court stated in a footnote that a jury question on the remaining issues of malpractice existed as to W&S as well as Cohan despite the fact that, as OTS argued, W&S did not rebut Spanos's testimony with its own expert testimony. The trial court stated that such separate expert testimony was not necessary because W&S's liability was derivative of Cohan's liability. OTS cites no authority showing that the trial court's statement of law is incorrect. Moreover, the issue of W&S's liability for Cohan's alleged malpractice based on Cohan's conflict of interest was presented to the jury. Accordingly, OTS fails to establish how it was harmed by the trial court allowing its claim to proceed to trial. To the extent that OTS attempts to claim that W&S had a

---

[20] See id. at 589.

separate contractual duty, this issue was not raised in its pre-trial order or presented at trial. Accordingly, this enumeration of error is without merit.

*Case No. A16A1450*

6. W&S argues that the trial court erred by denying summary judgment to it on its counterclaim against Lester. We agree and reverse. Based on its holding that Lester waived his rights to any and all claims against the defendants by signing the promissory note, the trial court erred by denying summary judgment as to whether Lester breached the terms of the note by failing to pay as agreed. To the extent that OTS may have been permitted to withhold fees during the pendency of the litigation, such a conclusion has no bearing on Lester's liability under the note. Accordingly, we reverse the judgment as to this specific claim, and remand the case for entry of an order consistent with this opinion.

7. The defendants contend that the trial court erred by denying summary judgment to them with regard to whether OTS waived its claim against them based on the release provision contained in the promissory note. As the defendants concede

18

in their brief, however, based on our affirmance of the trial court's judgment in Case A16A1499, this enumeration of error is moot.[21]

8. Finally, the defendants contend that the trial court erred by denying their claims for attorney fees in the amount of $112,996 and expenses in the amount of $4,996.10 under OCGA § 9-11-68. This Court recently decided the case of *Richardson v. Locklyn*,[22] in which this Court adopted Florida's test for determining whether, in the trial court's discretion, an offer of settlement pursuant to OCGA § 9-11-68 was made in good faith. Although application of this new test in this case may result in the same outcome as the trial court's original conclusion, we nevertheless vacate the trial court's order denying fees pursuant to OCGA § 9-11-68 and remand the case for a hearing and application of the new test announced in *Richardson*.[23]

*Judgments affirmed in part, reversed in part, and vacated in part; and case remanded. Andrews, P. J., concurs. Ray, J., concurs in Divisions 1 through 7 and in the judgment.*

---

[21] See *Weir v. Kirby Constr. Co.*, 213 Ga. App. 832, 835-836 (4) (446 SE2d 186) (1994).

[22] __ Ga. App. __ (Case No. A16A0978; decided Nov. 15, 2016).

[23] See id.

19