## SHACKELFORD *et al. v.* FITZGERALD.

The controlling question in this case involves the construction of a timber lease. The instrument recites that the lessor by the instrument in question has leased " all of the timber upon the following described tract of land, for the purpose of boxing, working, and otherwise using for turpentine purposes: All of forty-two thousand boxes that E. M. Carnes had the lease on, starting at Sedge Grass Branch on the east side of Dixie Highway; land containing about 3300 acres, that the said Carnes had boxed and cupped; also place known

. as the Watson place containing 1,000 acres that said Carnes had cupped and boxed. This said 1,000 acres on the west side of Dixie Highway. All lands known as Shackelford Brothers. All lands in the eighth district, Wilcox County, Georgia." In the tenendum clause are contained the following recitals: That the lessee is to have and to hold, box, work, and use said timber for turpentine purposes, and may commence using the timber or any part thereof at any time that he may desire and continue to work it and every portion thereof for the full term of two years, beginning with reference to each portion of the timber, from the time that the boxing and working each portion is commenced; that the lease shall continue to operate until all the timber and each and every part thereof has been boxed, worked, and otherwise used for turpentine purposes for the full period of two years. The lease is contained in a printed form, the portions above quoted, specifically describing the subject of the lease, being written with pen and ink and inserted in the blank form where it was intended that a description of the subject of the lease should be inserted. *Held*, that while certain parts of the printed lease might be broad enough to convey all timber for turpentine purposes standing upon the lands described, nevertheless, giving to the part that was written with pen and ink its proper weight and consideration, the instrument is effective to convey only the timber containing the forty-two thousand boxes specified in the part of the instrument written with pen and ink, in the absence of evidence tending to show more fully the intention of the parties and to show that the restrictions in the written part of the lease are not to be so construed independently of the other portions of the lease.

No. 2003. JANUARY 14, 1921.

Petition for injunction. Before Judge Gower. Wilcox superior court. March 15, 1920.

G. O. Shackelford, Thomas J. Shackelford, and F. C. Shackelford filed their petition against J. O. Fitzgerald, alleging as follows: They owned certain lots of land in Wilcox county, had a perfect title to the lands and to the timber growing thereon, and had been in quiet, peaceable, and adverse possession under written title for a number of years. G. O. Shackelford, on October 15, 1919, executed a lease in the name of Shackelford Brothers to certain timber for turpentine purposes on certain described lands, the timber leased being " All of forty-two thousand boxes that E. M. Carnes had the lease on, starting at Sedge Grass Branch on the east side of Dixie Highway; land containing about 3300 acres, that the said Carnes had boxed and cupped; also place known as the Watson place containing about 1,000 acres that said Carnes had cupped and boxed. This said 1,000 acres on the west side of Dixie Highway. All lands known as Shackelford Brothers. All lands in the eighth district, Wilcox County, Georgia." J. O.

Fitzgerald has entered upon said lands for the purpose of using the timber above described for turpentine purposes, and after entering upon said lands, in disregard of the lease and outside of the lease, he is cupping and boxing all of the timber on said lands; not only the 42,000 old boxes included in the lease, but other timber not boxed by Carnes & Company; and he is back-boxing the 42,000 trees boxed by Carnes & Company, and cupping and boxing all other timber; and this timber for the most part is very small timber, too small to be cupped and boxed, and the result will be to destroy the life of that timber. Fitzgerald has expressed his intention of working all of the timber for turpentine purposes, and not only the 42,000 old boxes which were leased to him; claiming the right to back-box these 42,000 trees and to work all of the timber for turpentine purposes. The lease to him covered no timber except the 42,000 old boxes, and he has no right under this lease to back-box this timber or to work the other timber for turpentine purposes; and if he is allowed to continue cupping and boxing these small trees it will result in irreparable damage to the plaintiffs, and these damages will be continuous from year to year, and they can not be readily or accurately computed. Fitzgerald is insolvent.

Fitzgerald answered and claimed that he had the right to cup and box all of the timber on the land described in the lease, under the terms thereof, and that his lease not only covered the " 42,000 old boxes " but all timber on these lands for turpentine purposes. Upon presentation of the petition the judge granted a temporary restraining order restraining the defendant from working any of said timber " except using and working the boxes cut by the said Carnes." The case came on for a rehearing on March 6, 1920, when evidence by affidavits was submitted and oral testimony taken. Upon the hearing the plaintiffs' attorney in open court offered to give bond in accordance with section 5504 of the Civil Code; but the court refused to allow this bond to be given, and proceeded with the hearing. After evidence and argument of counsel, the court took the case under advisement, and subsequently passed an order dissolving the injunction previously granted, " upon defendant giving bond as he offers to do in his pleadings, payable to the plaintiff." To this judgment the plaintiffs excepted.

*M. B. Cannon, Thomas J. Shackelford,* and *Shackelford & Meadow,* for plaintiffs. *Hal Lawson,* for defendant.

BECK, P. J. (After stating the foregoing facts.) The material portions of the lease under which the defendant claimed the right to turpentine all of the trees suitable for that purpose are as follows: "The said party of the first part [Shackelford Brothers] in consideration of the sum of $950.00 . . has granted, bargained, leased and conveyed unto the said party of the second part [Fitzgerald], his heirs and assigns, at the rate of nine hundred and fifty dollars all of the timber upon the following described tract of land, for the purpose of boxing, working, and otherwise using said timber for turpentine purposes: All of forty-two thousand boxes that E. M. Carnes had the lease on, starting at Sedge Grass Branch on the east side of Dixie Highway; land containing about 3300 acres, that the said Carnes had boxed and cupped; also place known as the Watson place containing about 1,000 acres that said Carnes had cupped and boxed. This said 1,000 acres on the west side of Dixie Highway. All lands known as Shackelford Brothers. All lands in the eighth district, Wilcox County, Georgia. To have and to hold, box, work, and otherwise use said timber for turpentine purposes unto the said party of the second part, his heirs and assigns. And it is hereby expressly covenanted and agreed that the said party of the second part may commence boxing, working, or otherwise using the said timber for turpentine purposes, or any portion thereof, at any time that said party of the second part may desire, and shall have the right to continue to box, work, or otherwise use said timber, and every portion thereof, for the full term of two years, beginning, with reference to each portion of the timber, from the time only that the boxing and working of each portion is commenced; it being the intention of the parties that this lease shall continue to operate until all of the timber and each and every part thereof has been boxed, worked, and otherwise used for turpentine purposes for the full period of two years. And it is further covenanted and agreed that the said party of the second part, heirs and assigns, shall have the free and unrestricted right to enter upon, occupy, and use the said land for the purpose of boxing, working, and otherwise using the timber thereon for turpentine purposes, as aforesaid, during the continuance of this lease." A part of this written instrument was a printed form, but that part of it beginning with the words, "All of forty-two thousand boxes," to and

including the words, " All lands in the eighth district, Wilcox County, Georgia," is written with pen and ink, being inserted in a blank left in the printed form for the insertion of matter descriptive of the lands leased. The court below refused to hear parol evidence as to the intention of the parties in making this contract which would throw light on its meaning, holding that the written instrument was unambiguous, and, construing it as a whole, held that it conveyed all the timber on the described tract of land for turpentine purposes, and that the defendant had a right to use the same for those purposes. The plaintiffs excepted to the judgment giving this construction to the lease, contending that the court's construction is not the correct one. While the question is not entirely free from doubt, we have reached the conclusion that this contention of the plaintiffs is well founded. As stated above, the part of the lease written with pen and ink and inserted in the blank form seems to have been intended to describe the thing leased. It contains a more specific description of the subject-matter of the contract than that contained in the other parts of the instrument which are in the printed form and which are general in their nature. The words containing the specific description should prevail, if the two can not be reconciled. And we do not see how there could be a reconciliation of the stipulations contained in the written portion with those parts which were printed, except by the insertion of terms or explanatory words which we do not feel authorized to insert in the absence of extraneous evidence throwing light upon the intention of the parties. Moreover, where parts of a contract or instrument are in writing and other parts of it are printed, the parts in writing are to be given the greater weight. In the case of *Surles* v. *Milikin,* 97 *Ga.* 485 (25 S. E. 322), it was said: " It is a well-settled rule, in construing contracts, such, for instance, as policies of insurance, the main portions of which are printed and the special or particular portions adapting it to the precise agreement of the parties are written, that the written words should be given greater force and effect than those which are printed. That rule is applicable, in principle, to the present case." And the case in which this ruling was made involved the construction of a printed timber lease, in which certain words were interlined in writing. As we have remarked, the question as to the proper construction of this lease is

a close one, and the meaning of it is not altogether free from ambiguity; and upon another hearing it will be proper for the court to hear evidence touching the intention of the parties as to the subject-matter of the lease, if such is offered. It is true that certain testimony of the defendant was admitted which might be considered upon the question of the intention of the parties; but the court evidently construed the contract without reference to this, holding that it was unambiguous; and his construction of the instrument is based upon the terms of the instrument itself. Besides, it is recited in the bill of exceptions that the court refused to allow the plaintiffs to adduce testimony to show the intention of the parties and the meaning of the contract. This was not excepted to in such a way as to make it an assignment of error to be passed upon here; but the admissibility of the evidence offered by the plaintiffs, should it be again offered upon the next trial, will be considered and ruled upon in the light of the holding in this decision. The error in the construction of the lease was upon the most material and possibly the controlling issue in the case, and therefore requires the grant of a new trial.

*Judgment reversed. All the Justices concur.*