43134. RAVEN, by Next Friend v. DODD'S AUTO SALES & SERVICE, INC. et al.

43135. SISSON, by Next Friend v. DODD'S AUTO SALES & SERVICE, INC. et al.

SUBMITTED OCTOBER 4, 1967—DECIDED FEBRUARY 29, 1968— REHEARING DENIED MARCH 18, 1968.

Richardson & Chenggis, Platon P. Constantinides, for appellants.

Lokey & Bowden, Glenn Frick, for appellees.

PANNELL, Judge. Appellants Barbara Raven, a minor through her next friend, and Elaine Sisson, a minor through her next friend, brought separate suits against Dodd's Auto Sales & Service, Inc., and David Dodd, as defendants, seeking to recover damages for injuries sustained in an automobile wreck while the defendant, David Dodd, was allegedly demonstrating an automobile belonging to the defendant corporation for the purpose of sale to one of the plaintiffs. Motions for summary judgment were made on March 1, 1967, in each case by Dodd's Auto Sales & Service, Inc., on the grounds that "David Dodd was not the

agent of this defendant at the time and place of the occurrence complained of, and this defendant, therefore, is not a proper party in this action." Attached to this motion were affidavits of H. C. Dodd, president and sole stockholder of the corporate defendant, and an affidavit of David Dodd, both dated February 23, 1967, the respective affidavits being as follows:

"I am the president and sole stockholder of Dodd's Auto Sales & Service, Inc., 3826 Clairmont Road, Chamblee, DeKalb County, Georgia.

"On May 24, 1966, I purchased a 1957 Ford Thunderbird from Mr. R. J. Townley. On May 28, 1966, I sold this Ford Thunderbird to my son David L. Dodd for $800. A true and correct copy of the sales invoice from Dodd's Auto Sales & Service signed by myself and David L. Dodd, is marked Exhibit 'A' and attached hereto as part of this affidavit.

"I understand that David Dodd had a wreck in the Ford Thunderbird on May 31, 1966.

"I certify that David L. Dodd was not employed by Dodd's Auto Sales & Service, Inc. on May 31, 1966, in any capacity whatsoever. On that date neither said company nor I had any interest in the 1957 Ford Thunderbird my son was driving, nor was he operating said vehicle as a servant or employee of myself or Dodd's Auto Sales & Service, Inc.

"This affidavit is given to be used as evidence in the above entitled matter at any and all hearings and trials of same, and particularly as evidence on the hearing of the motion for summary judgment in said case. Further, deponent sayeth not."

The affidavit of David Dodd was as follows: "I am the son of H. C. Dodd, the president and owner of Dodd's Auto Sales & Service, Inc. I am 24 years old and am now married and living with my wife, Evelyn Dodd.

"I was not married in May, 1966, and I was living in my father's home but I was not employed by my father or by Dodd's Auto Sales & Service, Inc.

"On May 24, 1966, my father, on behalf of Dodd's Auto Sales & Service, Inc. traded cars with a Mr. Townley and took in trade a 1957 Ford Thunderbird. I purchased the Thunderbird from Dodd's Auto Sales & Service, Inc. on May 28, 1966, as evi-

denced by the sales invoice, marked Exhibit 'A' attached hereto and made a part of this affidavit.

"On May 31, 1966, I was riding around in my Thunderbird. I called Barbara Raven and asked if she wanted to go for a ride. After I picked Barbara up at her home on Blackburn Way we drove over on Pine Oak Circle and picked up Elaine Sisson who was a friend of Barbara. I had never met Elaine Sisson before but I had known Barbara Raven for some time.

"After we picked up Elaine Sisson I went south on Northeast Road. We were simply riding around. I did not take them to ride with the idea of selling my car to anyone.

"I have never been employed by Dodd's Auto Sales & Service, Inc. At the time of my collision, I was driving my own car for my own personal pleasure. I was not operating said vehicle in behalf of Dodd's Auto Sales & Service, Inc. and I was not a servant or employee of said company. Dodd's Sales & Service, Inc. had nothing to do with me or my vehicle on the occasion complained of.

"This affidavit is given to be used as evidence in the above entitled matter at any and all hearings and trials of same, and particularly as evidence in the hearing of the motion for summary judgment in said case. Further, deponent sayeth not."

Attached to each of these affidavits as Exhibit "A" was a paper entitled "invoice" showing David Lamar Dodd on May 28, 1966, purchased from the defendant corporation a 1957 Ford Thunderbird, the automobile involved in the wreck on May 31, 1966. This instrument showed the "cash selling price of car" as $800 and as "balance financed" $800. The space for showing by whom it was financed and method of payment was left blank and provided that "It is agreed that the title of ownership of said car above described does not pass to me until the final cash payment is made." This instrument was signed Dodd's Auto Sales & Service by H. C. Dodd and by David Dodd. After the filing of the motion, plaintiff took interrogatories of the defendant corporation and the defendant, David Dodd, the interrogatories being served on April 12, 1967. The defendant, David Dodd, in answer to a question as to where he was employed prior to May 31, 1966, stated "Except for working with my father at

Dodd's Auto Sales & Service, Inc., located at 3826 Clairmont Road, Chamblee, Georgia, and the other jobs as herein set out, I was in the Georgia Penal System from November 1, 1962, to May, 1966, as well as from September, 1961 to August, 1962," that he purchased the Ford Thunderbird on May 18, 1966, for a consideration of $800, none of which has been paid; that he expected to pay for the car when funds became available, that he had no owner's certificate of vehicle registration, but only a tag receipt, and that from November 1, 1966, to April 8, 1967, he "did mechanical work with H. C. Dodd for $50 per week." His interrogatories further showed that while he had had various jobs since the wreck, he was living in a house owned by his father, the rental to be paid "as soon as funds are available," and that he had been living at that address since May 31, 1966, and that he was indebted to his father for various sums advanced to him. He denied that the corporate defendant was ever indebted to him during the past three years. The answers to the interrogatories of David Dodd were executed by him on April 27, 1967, and filed the same day. The answers to the interrogatories of the corporate defendant, sworn to by H. C. Dodd, showed that the approximate market value of the Ford Thunderbird on May 24, 1966, was $600 and on May 28, 1966, was approximately $150 to $200. In answer to the question of how the payment of the $800 price of the Ford Thunderbird was made "on May 28, 1966" the answer was it was "made on terms as shown by Exhibit 'A' [the sales invoice]," that the corporation had no owner certificate of vehicle registration, only a tag receipt; in answer to the question of whether David Dodd was indebted to the corporation on May 18, 1966, the answer was that an indebtedness was incurred on May 18, 1966, for the purchase of the Ford Thunderbird, that the original amount of the indebtedness was $800, and that the balance owing is $700; the interrogatories stated that David Dodd had never been employed by the corporation, that he was never listed as an employee on any Quarterly Return Form 941 of Internal Revenue Service, and that he had never received a W-2 form from the corporation, and that he was never listed as an employee on any liability insurance policy, workmen's compensation insurance policy, and group and/or life in-

surance policy. These interrogatories were sworn to April 24, 1967, and filed on April 26, 1967.

Barbara Raven (McClure) made an affidavit as follows:

"In the middle part of May, 1966, I was the owner of a 1964 Chevrolet Impala two-door hard top automobile with a bad starter. David Dodd came to my home and pulled my automobile to Dodd's Auto Sales & Service, Inc., at 3826 Clairmont Road, in the City of Chamblee, Georgia, for the purpose of replacing the starter. David Dodd was working at Dodd's Auto Sales & Service, Inc., as a mechanic.

"On or about May 25, 1966, David Dodd brought to my home a 1963 Chevrolet convertible automobile for demonstration purposes and to interest me into purchasing the car. The car belonged to Dodd's Auto Sales & Service, Inc., and David Dodd was working for the company.

"On May 31, 1966, David Dodd brought to my home a 1957 Ford Thunderbird automobile belonging to Dodd's Auto Sales & Service, Inc., for demonstration purposes and to interest me in purchasing it. He was employed by Dodd's Auto Sales & Service, Inc., on that date. This was the automobile which was involved in the collision, the subject matter of this law suit." The trial court sustained the motions for summary judgment of the corporate defendant in each case.

1. The movant for summary judgment has the burden of showing the absence of any genuine issues of material facts which under applicable principles of substantive law entitle him to a judgment as a matter of law. 6 Moore's Federal Practice, pp. 23, 35; *Holland v. Sanfax Corp.*, 106 Ga. App. 1, 4 (126 SE2d 442). To satisfy his burden the movant must make a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. *Sartor v. Arkansas Natural Gas Corp.*, 321 U. S. 620, 627 (64 SC 724, 88 LE 967, 7 FR Serv. 56c.41, Case 14); *National Screen Service Corp. v. Poster Exchange*, 305 F2d 647, 6 FR Serv2d 56c.41, Case 1 (CA5th, 1962); 6 Moore's Federal Practice, p. 2336. See also *Holland v. Sanfax Corp.*, 106 Ga. App. 1, 4, supra.

2. All inferences of fact from the evidence submitted at the hearing must be drawn against the movant and in favor of the

party opposing the motion (*Holland v. Sanfax Corp.*, 106 Ga. App. 1, 5, supra), and the papers supporting movant's position are closely scrutinized, while the opposing papers are indulgently treated, in determining whether the movant has satisfied his burden. 6 Moore's Federal Practice, p. 2338.

3. "The credibility of a witness is a matter to be determined by the jury under proper instructions from the court." *Code* § 38-1805. "When a witness shall be successfully contradicted as to a material matter, his credit as to other matters shall be for the jury." *Code* § 38-1806. Where, on motion for summary judgment, it appears that the credibility of a witness or witnesses upon whose testimony the grant of the summary judgment depends, is at issue in the case "Neither the trial court nor this court will resolve the matter or is concerned with the credibility" but will leave this matter to the jury, rather than grant summary judgment based on the "uncontradicted" area of the testimony of the witness, whose credibility is for the jury, and not for the trial judge or this court. See in this connection *Benefield v. Malone*, 112 Ga. App. 408 (145 SE2d 732); *General Gas Corp. v. Carn*, 103 Ga. App. 542 (120 SE2d 156); *Bagley v. Firestone Tire &c. Co.*, 104 Ga. App. 736 (123 SE2d 179); *Darby v. Interstate &c. Ins. Co.*, 107 Ga. App. 409 (130 SE2d 360); *Hollis v. St. Joseph Infirmary*, 108 Ga. App. 309 (132 SE2d 841).

"The success of an attempt to impeach a witness is always a jury question, as is the credibility of the witnesses where they contradict one another, or themselves. We do not think the judge ought on a motion for summary judgment to have considered the affidavits attacking or sustaining the character of the witness. He should not have concerned himself at this time with the question what he would do if the jury should render a verdict for plaintiffs. A judge indeed does not know what he would do in that regard until he has heard the trial in open court before the jury and has the benefit of the opinion of the jury expressed in their verdict. Only when the evidence is such that it is clear the jury would have none to go on, *though they believed that unfavorable to the movant for summary judgment,* can the motion be sustained and a jury trial denied." Firemen's Mutual Ins. Co. v. Aponaug Mfg. Co., 149 F2d 359, 363, 8 FR Serv 56c.41, Case 8 (CCA5th, 1945). (Emphasis supplied.)

"To satisfy the moving party's burden the evidentiary material before the court, if taken as true, must establish the absence of any genuine issue of material fact, and it must appear that there is no real question as to the credibility of the evidentiary material, so that it is to be taken as true. If the non-existence of any genuine issue of material fact is established by such credible evidence that on the facts and the law the movant is entitled to judgment as a matter of law, the motion should be granted, unless the opposing party shows good reason why he is at the time of the hearing unable to present facts in opposition to the motion. If, however, the papers before the court disclose a real issue of credibility or, apart from credibility, fail to establish clearly that there is no genuine issue as to any material fact, the motion must be denied." 6 Moore's Federal Practice, p. 2339. Any intimation in *Ussery v. Koch,* 115 Ga. App. 463, 469 (154 SE2d 879) that this rule means that if the testimony of a witness on a particular point is uncontradicted, even though he has been impeached and his credibility a matter for the jury, the trial court must grant a motion for summary judgment in accordance with this "uncontradicted" testimony, is hereby disapproved.

4. While a witness is not to be discredited because of a discrepancy as to a wholly immaterial matter (*Daniels v. Luton,* 40 Ga. App. 741 (1) (151 SE 659)) or because of proof of prior contradictory statements as to a wholly irrelevant and immaterial matter (*Bryant v. State,* 191 Ga. 686 (2) (13 SE2d 820); *Grant v. Hart,* 197 Ga. 662 (7) (30 SE2d 271); *Benefield v. Malone,* 112 Ga. App. 408, 411, supra), yet where such unexplained discrepancy, or contradiction by other witnesses, is as to a matter relevant and material to the issue, it is error to grant a motion for summary judgment. Firemen's Mutual Ins. Co. v. Aponaug Mfg. Co., 149 F2d 359, 363, supra. See also *Fortson v. State,* 69 Ga. App. 378 (2) (25 SE2d 820).

Neither the jury, nor the trial judge on motion for summary judgment, is bound in every case to accept evidence as true although it is not contradicted by direct testimony. It may be inherently subject to discredit or it may be so from the circumstances surrounding it (see *Metropolitan Life Ins. Co. v. Joye,* 77 Ga. App. 357, 363 (48 SE2d 751) and citations) or is subject

to discredit because the credit of the witness's entire testimony is at issue.

5. In view of the above rulings it now becomes necessary to determine whether the unexplained contradictory testimony of the defendant, David Dodd, relating to his employment and the conflict in his testimony and his father's testimony relating to the same matter are as to a matter material to the issues in the case so as to place in question the credibility of the only two witnesses upon whose testimony the validity of the grant of the motion for summary judgment must rest. We are not here concerned with the question of contradictory statements of a witness made out of court, which required that a proper foundation be laid before such contradictory statements are admissible in evidence. See *Ussery v. Koch*, 115 Ga. App. 463, supra. Both the father, president of the corporate defendant, and his son, the other defendant, in their affidavits stated that the son was not an employee or agent of the corporate defendant on May 31, 1966, which is the ultimate fact to be determined, and the basic fact in issue in the motion for summary judgment. There is no evidence directly contradicting these statements; however, that is not necessary in order to impeach the witness as to such statements. The statement by both witnesses that the son had never been employed by the corporate defendant would alone have supported a summary judgment if uncontradicted. It was therefore material to the issue. Accordingly, the affidavit of the plaintiff, Barbara Raven (McClure) that approximately two weeks prior to the accident, the defendant son came and picked up her automobile to be repaired by the corporate defendant, and that at that time he was employed by it as a mechanic, was sufficient to authorize a jury to find that the son and the father were not telling the truth when they stated in their affidavits that the son had never been employed by the corporate defendant. This becomes doubly true when we consider the interrogatories of the son which disclose that he worked for the corporate defendant before the time of the wreck as well as after the time of the wreck, which contradicted the father's affidavit and interrogatory and contradicted the son's affidavit. Under these circumstances, the jury would be authorized to disregard and deem not credible

the testimony of both the father and the son, that the son was not an agent or servant of the corporate defendant on the particular day in question. This, coupled with the fact that the father was a sole stockholder of the corporate defendant and that his son was obviously dependent upon him for support, would have authorized a jury to find that even though the son was not listed officially as an employee of the company, he still could have been a servant and agent of the company without pay while being supported by his father from the father's personal funds. While this would not authorize a jury to find that the son was working for the corporate defendant as a servant or agent on May 31, 1966, that is not necessary here. The burden is on the movant to prove by uncontradicted and credible testimony that the son *was not* the servant or agent on May 31, 1966. Under the rules of law applicable, the movant defendant failed to carry this burden, and also failed to present a prima facie case which would have required the plaintiff to have come forward with proof that the son was actually the servant or agent at the time and occasion in question.

Accordingly, we must hold that the trial court erred in granting its motion for summary judgment.

We have found only one case which militates against the conclusion we have reached here—*Ussery v. Koch*, 115 Ga. App. 463, supra. In that case, a petition had been brought in three counts but only the first count was involved in the matter to which we will here refer. The ultimate fact in that count upon which the plaintiff relied for recovery for a death occurring in an automobile wreck was that at the time of the wreck while the car was proceeding at a speed of 70 m.p.h. "the defendant Green and the deceased Langley, riding in the front seat, were engaged in the process of changing drivers under the steering wheel . . . these acts taking place in the presence of the defendant Koch." P. 465. William Jones, administrator of the defendant, Langley, filed a motion for summary judgment, which was granted. The defendant Koch testified that Langley was driving at the time of the wreck. There was evidence that Koch, at a prior time and out of court had stated to a patrolman that he was driving.

The court, in its opinion in reference to this matter, ruled as follows (p. 468):

"(b) The plaintiff also argues that since the defendant Koch at one time stated to a patrolman that he was driving and then later testified that Kay Langley was driving, this contradiction creates a doubt as to his credibility which would leave his testimony subject to being impeached and thus for a jury to resolve. Counsel for plaintiff points out that it is the jury's prerogative to ascertain if a witness has been impeached and then determine what credence to give his testimony. *Code* § 38-1806; *Swift & Co. v. Lawson*, 95 Ga. App. 35, 54 (6) (97 SE2d 168).

"This principle is applicable where a witness has been successfully contradicted as to a material matter. *Atlantic C. L. R. Co. v. Hodges*, 90 Ga. App. 870 (2) (84 SE2d 711). In the instant case, the witness did not make a contradictory statement as to the vital point at issue to wit, whether the defendants were changing drivers, but merely as to who was driving at the time of the accident. Hence, the sole remaining factor to be considered devolves upon what effect the fact the witness made a sworn statement which contradicted an earlier unsworn one, as to an issue not material to the motion for summary judgment, would have upon his testimony.

"Evidence is not admissible for the purpose of attempting to impeach a witness by contradictory statements on an immaterial matter. *Bryant v. State*, 191 Ga. 686 (2) (13 SE2d 820); *Grant v. Hart*, 197 Ga. 662 (7) (30 SE2d 271). As held in *Benefield v. Malone*, 112 Ga. App. 408, 411 (145 SE2d 732): 'Affidavits in support of or in opposition to motions for summary judgment must' set forth such facts as would be admissible in evidence 'on the trial of the case. *Code Ann.* § 110-1205.'"

We are not here concerned with the admissibility of the impeaching evidence of a statement made out of court; but we are concerned with the import of that decision that the contradictory statement was not on a matter material to the case. The matter at issue in the *Ussery* case was whether or not those on the front seat were swapping drivers at the time and place in question. Koch's testimony that Langley was driving negatived the posi-

426

tive aspects of the issue, that is, if this testimony were uncontradicted and unimpeached, it would demand a finding that those on the front seat were not changing drivers. If this be true, the evidence of a contradictory statement as to who was driving, certainly related to a fact material to the issue in the case. Where the issue is "yes" or "no" as to a fact, testimony which, if believed, would demand a "no" answer is certainly material to the issue; and evidence of a prior contradictory statement by the witness, as in the *Ussery* case, or where testimony of the same witness or other witnesses contradicts the same, would be evidence contradictory to material evidence on a material issue in the case. It follows, therefore, that we must disapprove of the ruling in *Ussery v. Koch* to the effect that the alleged contradictory statement was not as to a matter material to the issue involved. The result reached in the *Ussery* case is correct in that the impeaching evidence was not admissible because no proper foundation was laid for its admission, and it is not necessary to overrule the judgment reached.

*Judgment reversed. Bell, P. J., and Whitman, J., concur.*