31429. HENDERSON MILL LIMITED
v. McCONNELL et al.

HALL, Justice.

The central issue presented on this land purchase case concerns the interpretation of an agreement under which the sellers, McConnell and Armistead, were to grant quitclaim deeds to buyer, Henderson Mill Limited, of portions of the subject land as certain portions of the purchase price were paid. Basically, the purchase price consisted of a down payment to be made at the time of closing, and a further amount secured by two deeds to secure debt on the property. The contractual provision here in issue was a "special stipulation" to the deed to secure debt, and reads as follows:

"Grantee agrees to release from this instrument by means of a Quit-Claim Deed(s), at any time and from time

to time any portion or portions of the property hereby secured in tracts of five (5) acres or any multiple thereof upon the payment or prepayment on the purchase price of the property at the rate of $1,152.00 per acre, and to execute and deliver all such documents and papers as may be necessary or desirable by the Grantor to consummate and evidence any such release or releases. Grantor shall have the right to select all parcels released, provided that all parcels released after the first parcel must be contiguous to a parcel previously released. In addition, no more than fifty (50%) percent of the property fronting on Henderson Mill Road shall be released until after all the other property herein described has been released in accordance with the terms hereof. Grantor shall be entitled to releases with respect to all payments and prepayments on the debt secured hereby, and all prepayments shall be credited to the principal installments next due in their respective order of maturity. The right to release the property may be exercised at any time of payment or at any time thereafter by Grantor furnishing to Grantee in writing a description of the portion or portions of the property desired to be released. Until such time as existing debt in favor of Mary R. Griffin, (recorded in Book 103, Page 577, Newton County Records, herein called 'existing debt'), has been paid in full, all prepayments on the purchase price of the property shall be applied at the rate of $450.00 per acre on the principal of the two existing debts on the property, in order to obtain releases from the existing debt. The balance of $702.00 per acre shall be applied to the principal of this purchase money promissory note. In addition to the above rights of release, Grantor shall be entitled to release portions of the property for road rights-of-way and for gas, water, sewer, and all other utility easements without the payment of any consideration thereof. All property so released shall commence at the southeastern line of the property."

1. The question for us to decide is whether under that provision buyer-grantor Henderson Mill was entitled to have land released by quitclaim deed as a result of the down payment on the purchase price made at the closing, or whether the release provision applies only to payments

on the *secured debt.* We interpret the agreement in the latter manner, and affirm the trial court which granted partial summary judgment to sellers in Henderson Mill's suit to compel release of acreage in return for the down payment.

At oral argument here, both parties stipulated that this contract is not ambiguous. Its interpretation is a question of law for the court. Code Ann. §§ 20-701, 20-704(1).

The release provision by its very terms purports to release land "with respect to all payments and prepayments made on the *debt secured hereby* . . . " The "debt" does not include the down payment. It is true that earlier the provision stated that a release would be made "upon the payment or prepayment on the *purchase price,*" which would technically include the down payment; but we think the whole transaction shows that the parties must have understood (Code Ann. § 20-702) that "purchase price" in that context referred to the amount of the secured debt only.

This was a transaction in which buyer took subject to an existing debt on the property. Buyer urges that the phrase "the debt secured hereby" does not refer to the whole release agreement, but has a special limited applicability because of the wrap-around nature of the note. This is unpersuasive.

The interpretation buyer urges would produce a foolish situation in which land would be released from a deed to secure debt before any payment was made on the debt secured by the deed. As soon as the closing was over and buyer had made the down payment, he would be entitled to a release of land. Our reading of the documents does not support the conclusion buyer urges. The trial court ruled correctly that the agreement did not call for a release based upon the down payment.

2. The trial court did not err in granting to defendants a partial summary judgment (on Count I alone), when their motion was for summary judgment on the whole case. See Code Ann. § 81A-156 (a, d); *Word v. Henderson,* 220 Ga. 846, 847 (142 SE2d 244) (1965); *Moore v. Wachovia Mfg. Co.,* 138 Ga. App. 646, 647 (226 SE2d 812) (1976); *Mountain View Enterprises v.*

*Diversified Systems,* 133 Ga. App. 249, 250 (211 SE2d 186) (1974); *Finney v. Pan-American Fire & Cas. Co.,* 123 Ga. App. 250, 253 (211 SE2d 188) (1971). Cf. *Cato v. English,* 228 Ga. 120 (184 SE2d 161) (1971).

*Judgment affirmed. All the Justices concur.*

ARGUED SEPTEMBER 21, 1976 — DECIDED OCTOBER 26, 1976.

*Merrill & Dillon, Robert C. Dillon,* for appellant.
*Armistead & Little, Victoria D. Little,* for appellees.