## 61820. GINGOLD v. GOVERNMENT EMPLOYEES INSURANCE COMPANY.

McMurray, Presiding Judge.

This is an excess judgment case, that is, a complaint brought by an insured (in this case the trustee of the bankruptcy estate of the insured) against his insurance carrier for its failure to settle a claim against the insured which resulted in a verdict and judgment far in excess of the insurance policy limits of liability ($10,000 insurance coverage, $120,000 judgment). For the purposes of this appeal the insurance carrier will be referred to as "GEICO," the defendant. Further, for consideration in detail of the facts of the damage suit by and between Johnston and another, see *Johnston v. Woody,* 148 Ga. App. 152 (250 SE2d 873), in which the judgment of the trial court was affirmed by this court.

The plaintiff (Gingold, as trustee of the bankruptcy estate of Johnston) has sued GEICO (Government Employees Insurance Company) in three counts. In Count 1 the plaintiff contends that the failure to settle the claim against Johnston for the policy limits "was due to the negligence of the Defendant, its agents and employees, and said negligence proximately caused Johnston damages in the amount of $110,000," plus interest. Count 2 alleges a breach of defendant's contractual duty owed to Johnston under its contract of insurance, said breach having resulted in the same damages as shown in Count 1. Count 3 alleges defendant, having a duty to exercise the utmost good faith in attempting to settle the damage suit "within the policy limits of its contract of insurance," and failing and refusing to exercise said degree of utmost good faith "is thereby strictly liable to Plaintiff therefor," said damages being in the same amount set forth above.

By amendment to the complaint plaintiff avers that defendant failed to accord the interest of its insured "the same faithful consideration it gives to its own interest" and its failure to settle the personal injury case was "capricious and in bad faith."

The defendant responded by filing numerous motions and defenses and an answer, in general, denying the claim, admitting only jurisdiction, the existence of the policy of insurance and its representation of the defendant in the heretofore mentioned damage suit. After discovery defendant moved for summary judgment. Based upon the entire record the trial court held there was no genuine issue as to any material fact, and defendant GEICO was entitled to summary judgment in its favor. Final judgment was entered in favor of the defendant, and it was dismissed as a party. Plaintiff appeals. *Held:*

1. An insurer has the duty to exercise ordinary care in its investigation of a case of liability against its insured to determine whether to defend the suit or to settle it. See *Cotton States Mut. Ins. Co. v. Phillips,* 110 Ga. App. 581, 584 (3) (139 SE2d 412); *U. S. Fidelity &c. Co. v. Evans,* 116 Ga. App. 93, 94 (156 SE2d 809).

2. If an insurer could have settled the damage suit against the insured for an amount within the policy limits this is not in and of itself evidence of negligence or bad faith. The failure and refusal of an insurer to settle the claim within the policy limits, if it may do so, requires a finding that same was capricious and constituted bad faith before an insurer would be liable in an excess judgment case against it. See *Cotton States Mut. Ins. Co. v. Fields,* 106 Ga. App. 740 (128 SE2d 358); *Georgia Cas. &c. Co. v. Reville,* 97 Ga. App. 888, 891 (104 SE2d 643); *Cotton States Mut. Ins. Co. v. Phillips,* 110 Ga. App. 581, 584, supra; *U. S. Fidelity &c. Co. v. Evans,* 116 Ga. App. 93, 94-95,

supra.

3. Generally an issue in an excess judgment case against the insurer, as the defendant, involves the question of whether or not the insurer violated any duty to its insured in failing or refusing to accept offers of settlement. See *U. S. Fidelity &c. Co. v. Evans,* 116 Ga. App. 93, 94 (2), supra. In that case in Division 2 this court discussed the terms "bad faith" and "negligence," with reference to other jurisdictions seeming to use these two terms "as disjunctive or alternative tests," citing also *Francis v. Newton,* 75 Ga. App. 341 (43 SE2d 282). The opinion then quoting from 7A Appleman, Insurance Law and Practice, 576, § 4712 (now 7C Appleman, 502, § 4712, revised (Berdal Edition)), states that mere terminology means little, and it is "rather the factual situation which is significant in the light of the duty which exists, and normally the trier of fact must make the determination of liability or non-liability." That decision then goes on to discuss other texts and decisions with respect to the issue of whether to settle or try the case, that the insurer, acting through its representatives, must use such care as would have been used by an ordinarily prudent insurer with no policy limit applicable to the claim. "The insurer is negligent in failing to settle if, but only if, such ordinarily prudent insurer would consider that choosing to try the case (rather than to settle on the terms by which the claim could be settled) would be taking an unreasonable risk — that is, trial would involve chances of unfavorable results out of reasonable proportion to the chances of favorable results," quoting from and citing Keeton, Liability Insurance and Responsibility for Settlement, 67 Harvard Law Review 1136, 1147. The opinion goes on further to say that the insurer, as a professional in the defense of suits, "must use a degree of skill commensurate with such professional standards," and must consider as paramount its insured's interest, rather than its own, and may not gamble with the insured's funds. Further, if the insurer refused to settle a claim because it believed that the insured is not liable, it is nevertheless answerable for such refusal if its belief was arbitrary or capricious, citing 7A Appleman, Insurance Law and Practice, 553, § 4711 (now 7C Appleman, 367, 424, § 4711, revised (Berdal Edition)), and other citations. In substance, the finding of this court in *U. S. Fidelity &c. Co. v. Evans,* supra, at pages 96 and 97, is that the insurer must accord the interest of its insured the same faithful consideration it gives its own interest, affirming in that case a finding that the evidence authorized a judgment against the insurer inasmuch as the evidence did not demand a finding that the insurer in refusing to settle a claim gave equal consideration to the interest of the insured, believing that the insured was not liable and that it was not acting arbitrarily or capriciously in refusing to settle.

4. In the case sub judice the insurer had issued a minimum limits insurance coverage, yet the damages involved (personal injury to the opposing party) were relatively great. See *Johnston v. Woody,* 148 Ga. App. 152, supra. The insurer was aware after the investigation that the minimum limits of the insurance policy would not cover the personal injuries. The injured party, in December 1974, made an offer of compromise, that is, to settle within the limits of the policy, not by the execution of a release but by the execution of a covenant not to sue. This was due to the desire to make a claim also against the nonresident manufacturer of the motor vehicle involved and the manufacturer of the seat belt in the automobile which would rule out settlement with the use of a release of the tortfeasor. As the manufacturer was a nonresident, a claim against it could not have been maintained in DeKalb County if it was made a party and then a settlement entered with Johnston. A federal court suit would have been necessary and apparently was contemplated. At no time during the settlement negotiations did the insurer or its lawyers ever try to advise Johnston of the negotiations or of the offer to settle by use of the covenant not to sue or of the necessity of his consent to a settlement. Johnston, however, had entered the Marine Corps and was absent without leave from December 31, 1974, to "shortly after talking to my attorneys for the first time in June of 1975." There is evidence the insurer tried to get in touch with him, that he was aware of same but refused to make himself available between the periods of December 1974 and June 1975. After talking to the lawyers in June 1975, he returned to the Marine Corps but two weeks later went "AWOL [Absent Without Official Leave] again . . . this time for approximately six months until early January 1976." Johnston deposed further by affidavit that he was then discharged by the Marine Corps after serving "about three weeks," contacted "my attorneys upon my return from the Marine Corps in January of 1976," advising them of his whereabouts and "was finally contacted by them in late October of 1976." He also disputed ever having talked to plaintiff's counsel prior to the trial of the personal injury case.

It is the insurer's contention that Johnston had reported his version of the collision as due to brake failure (by written statement dated May 13, 1974, the adjuster having contacted him although the lawyers could not), and that he then refused to cooperate further inasmuch as counsel contend they could not contact him during 1974 by mail, regular and certified, and by telephone until June 1975, and thereafter due to his being AWOL from the Marine Corps. We are concerned here with the period of time that the covenant not to sue offer was made (December 1974) in return for the limits of Johnston's

policy, which was rejected by the insurer (both in telephone conversations and by letter dated February 6, 1975). The insurer insisted that in addition to the covenant not to sue (as communicated by letter dated February 6, 1975), plaintiff should "indemnify and save harmless . . . Johnston, his heirs, representatives and assigns, and [insurer] against any loss, cost, damage, or expense of any nature or character whatsoever which might result by any claim or suit for contribution, third party action, or otherwise by such other person, firm or corporation in any litigation, arbitration, or other proceeding by or on behalf of Covenantor in any court or before any board against any party or parties other than Covenantee who might be claimed responsible for injury or damage to Covenantor," and that if Johnston should be brought into any such proceeding by third party action or by any method or means whatsoever, the covenantor (the injured claimant/plaintiff) would "immediately assume the responsibility for the defense of any such claim and save [Johnston and the insurer] harmless from any and all loss, cost, damage or expense as a result thereof." This counteroffer was rejected because of the indemnifying clause, and the suit continued, the manufacturers being added as defendants in the same case rather than an action being filed in the federal court as contemplated.

While the insurer contends this was caused by the absence of Johnston; nevertheless, same was presented without his acceptance or consideration, and this method of settlement was rejected. At trial, the same substitute offer of settlement by the insurer was made and rejected, ostensibly because of the other parties defendant added (now additional defendants in the case), as well as the requirement to pay all costs, loss, damage, etc., in the event Johnston was made a third party defendant.

Both sides have presented affidavits by professionals (the lawyers) based upon hearsay, assumption, conclusions, and opinion, and expressing opposite views as to good or bad faith in the insurer's investigation and handling of the interests of the insured. Other issues of good or bad faith are in dispute as to whether or not the insurer, faced with a possible judgment to include the maximum limit of its policy, had accorded the interest of its insured "the same faithful consideration it gives its own interest." *U. S. Fidelity &c. Co. v. Evans,* 116 Ga. App. 93, 97, supra.

Summary judgment can never be granted based solely upon opinion evidence, as the "captains of decisions [the jury] as to credibility of witnesses," must decide such issues. *Ginn v. Morgan,* 225 Ga. 192, 194 (167 SE2d 393). See also *Ehlers v. Golding,* 227 Ga. 742 (2), 745 (182 SE2d 870); *McCraw v. Watkins,* 242 Ga. 452, 453 (1) (249 SE2d 202). Of course, opinion evidence is also sufficient to make

a jury issue. *Word v. Henderson,* 220 Ga. 846 (142 SE2d 244); *Ginn v. Morgan,* 225 Ga. 192, 193, supra.

The limited evidence here does not demand a finding that conclusively and unequivocally by uncontested evidence there is no genuine issue of material fact, and the insurer is entitled to judgment as a matter of law. *Taylor v. Bolton,* 121 Ga. App. 141, 142 (173 SE2d 96); *Shutley v. Hite,* 118 Ga. App. 664 (165 SE2d 169); *Watkins v. Nationwide Mutual Fire Ins. Co.,* 113 Ga. App. 801, 802 (149 SE2d 749); *Raven v. Dodd's Auto Sales & Service,* 117 Ga. App. 416, 421 (3) (160 SE2d 633); *Georgia Cas. &c. Co. v. Almon,* 122 Ga. App. 42, 44 (176 SE2d 205).

*Judgment reversed. Quillian, C. J., and Pope, J., concur.*

DECIDED JULY 8, 1981 —
REHEARING DENIED JULY 9, 1981

*Tom Pye,* for appellant.
*John B. Harris III, Joseph H. Chambless,* for appellee.