69028. TUZMAN et al. v. LEVENTHAL et al.
(329 SE2d 610)

BIRDSONG, Presiding Judge.

Summary Judgment — Breach of Indemnity Agreement. In 1976-1977, Tuzman was involved with the appellees (Leventhal and Dobbs, Leventhal and Co., Inc.) in an investment venture (Georgia-Kentucky Coal Company). Apparently this venture was terminated as between the venturers (Leventhal) and the investors (including Tuzman), and ultimately releases were signed between the venturers and investors. As a part of the releases, Leventhal and Dobbs, Leventhal and Co. signed an indemnity agreement in 1977 indemnifying Tuzman for any claims levied against Tuzman by the Internal Revenue Service as the result of the disallowance of tax losses emanating from the invest-

ment in Georgia-Kentucky Coal Co.

The indemnification agreement shows the following: "(1) Indemnitors will indemnify Tuzman and hold Tuzman harmless from any and all liability, loss or damage Tuzman may suffer as a result·of any claim, demand, assessment, cost or judgment asserted against Tuzman . . . which may arise out of the disallowance based on a government-initiated audit or investigation of any part or all of the losses of Georgia Kentucky Coal Company (a partnership) heretofore claimed by Tuzman on their income tax return for 1974 [in the amount of $40,000] loss claimed in 1974. Indemnitors' liability hereunder shall include, but is not limited to, any and all additional income taxes together with any and all penalties and interest thereon which Tuzman shall have paid or become liable to pay, and shall include all expenses, attorney's fees, and other costs of investigation, adjustment, litigation, and procurring or attempting to procure Tuzman's discharge therefrom [as set forth in Para. 3 hereinafter]. . . . (3) Indemnitors agree to defend Tuzman against any and all claims or assessments made or actions filed against Tuzman with respect to the subject of the indemnity contained herein, whether such claims, assessments or actions are rightfully or wrongfully brought, assessed or filed. In case a claim should be brought or an assessment made, or an action filed with respect to the subject to indemnify herein, indemnitors may employ attorneys and accountants of their own selection to appear and defend the claim, assessment or action on behalf of Tuzman at the expense of indemnitors. Indemnitors shall have the *sole* authority for the direction of the defense, and shall be the *sole* judge of the acceptability of any compromise settlement of any claims, assessment or actions against Tuzman." (Emphasis supplied.)

Subsequent to the execution of the indemnity agreement, the Internal Revenue Service in fact filed an exception to the claim for loss and made a demand upon Tuzman for additional taxes. Tuzman notified Leventhal of the claim. Leventhal, pursuant to the provisions of the indemnity agreement, selected his own tax attorney-consultant to represent Leventhal's interest as well as that of Tuzman. In negotiations between the counsel selected by Leventhal and counsel for Tuzman, it quickly became apparent that Tuzman would only accept counsel for defense of the litigation who would enter into a full attorney-client relationship to the exclusion of a residual relationship to the indemnitors. Leventhal informed Tuzman's counsel that while representation would be afforded per the indemnity agreement, it would be under a reservation of liability because insistence upon a full attorney-client relationship between Tuzman and Leventhal's counsel might well compromise the ability of the indemnitors to control the defense or to exercise sole acceptability of any settlement as

authorized by the indemnity agreement. Under Georgia law if an insured fails to comply with conditions precedent in an insurance (or indemnity) agreement, the insurance company may disclaim coverage or provide a defense pursuant to a reservation of rights even in the absence of a contractually recognized provision for reservation. See *State Farm Mut. Auto. Ins. Co. v. Wheeler*, 160 Ga. App. 523, 525 (287 SE2d 281). The record indicates Leventhal followed the path of reservation rather than an absolute refusal by the indemnitors to undertake defense of the Internal Revenue Service's claim against Tuzman in accordance with the indemnity agreement.

Because of the inability of counsel to agree, Tuzman retained his own counsel and defended the claim by the Internal Revenue Service. An initial compromise offer by the Internal Revenue Service was rejected by Tuzman. After protracted proceedings, the claim was paid in approximately the amount of the original settlement offer but Tuzman had further incurred legal expenses and interest and penalty charges of approximately $20,000 additional to the original claim.

Contending that the Tuzmans did not comply with an essential condition precedent and violated the right of the indemnitors to select counsel and govern and direct the defense of the IRS claim, Leventhal successfully moved the trial court for a grant of summary judgment based upon a breach of the indemnity agreement by the Tuzmans. It is this grant of summary judgment that forms the basis of this appeal. *Held*:

The Tuzmans contend that Leventhal's injection of a reservation of liability was an attempted modification of the agreement of indemnification. While it may be correct to conclude that the intention of the indemnification was to indemnify Tuzman from monetary loss, that indemnification was carefully circumscribed and the limitations were clear and obviously known to the parties as they wrote the specific limitations into the agreement in their own hand. Leventhal reserved fully and exclusively the right to control all negotiations and defenses involved in a tax dispute. A reservation of liability is a matter different from and outside the indemnification which could come into play only if Tuzman experienced a loss after Leventhal exercised his sole authority to defend or settle a claim by the Internal Revenue Service. *Richmond v. Ga. Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 219 (231 SE2d 245).

Interpretation of this indemnification agreement requires the application of the ordinary rules of construction of a contract. To apply the construction advanced by Tuzman requires a reading of the contract that the parties intended payment of an Internal Revenue Service claim wholly independent of any obligation or right by the indemnitors to defend any such claim, to select a defense attorney, or to pass on any proposed settlement, or compromise of such claim. How-

ever, the indemnification expressly limited itself to the right of the indemnitors *solely* to defend, settle or compromise any claim. Thus, the contract clearly limited payment of indemnification only after fulfillment of certain conditions precedent. These conditions precedent were not submerged in fine print but conspicuously were incorporated by the handwritten insertion of such conditions in the part of the contract creating the obligation to pay indemnification and these were initialed by the parties. What the Tuzmans seek this court to condemn by opinion is to recognize and apply a modification of the terms of the contract, i.e., the addition of a reservation of liability. However, the indemnification agreement is silent and certainly neutral insofar as liability or reservations of liability are concerned. The indemnification agreement simply requires the indemnitors to assume defense of any Internal Revenue Service claim. See *H. Y. Akers & Sons v. St. Louis Fire &c. Ins. Co.*, 120 Ga. App. 800 (172 SE2d 355). This court may not create a modification of the plain terms of a contract by judicial fiat and then reverse a judgment on the basis of the court's own creation. Where the provisions of a contract are unambiguous, its interpretation is indeed a question of law for the trial court. OCGA § 13-2-1; *Henderson Mill Ltd. v. McConnell*, 237 Ga. 807, 809 (229 SE2d 660). However, courts are not at liberty to revise contracts while professing to construe them. *Smith v. Standard Oil Co.*, 227 Ga. 268 (1) (180 SE2d 691); *Stuckey v. Kahn*, 140 Ga. App. 602, 606 (231 SE2d 565).

Rather, we are bound to follow the rule that where parts of a contract are in print and other parts are handwritten, the parts written by hand are to be given the greater weight. *Shackelford v. Fitzgerald*, 151 Ga. 35, 39 (105 SE 597). The clear intent of this contract was to grant exclusive (sole) right to the indemnitors to defend, decide tactics, compromise or settle any claim; thus, Tuzman, through counsel, was obligated to defer any such actions to the indemnitors. It is clear that this was not done in this case.

To enforce a contract involving a condition precedent, the condition precedent must be performed before the contract becomes absolute and obligatory upon the other party to the contract. *Roush v. Dan Vaden Chevrolet*, 155 Ga. App. 372, 373 (270 SE2d 902). Tuzman therefore was required to allege and prove that all conditions precedent had been performed or establish legal excuse for non-compliance. See *Corrosion Control v. William Armstrong Smith Co.*, 148 Ga. App. 75, 76 (251 SE2d 49); *Clark's Super Gas v. Tri-State Systems*, 129 Ga. App. 650, 651 (200 SE2d 472). It is undisputed that Tuzman made no effort to submit defense tactical decisions or settlement negotiations to Leventhal's selected counsel as required by the indemnity agreement. Though Tuzman sought to show that the refusal to accept the services of Leventhal's attorney was based upon an

asserted conflict of interest, the record perforce is devoid of any such conflict other than by the rankest of speculation, inasmuch as Tuzman never availed himself of the protection afforded by the indemnification.

In order for Tuzman as a plaintiff to sustain the burden for summary judgment, it was necessary that there be no genuine issues of fact as to every allegation necessary for recovery. *Raven v. Dodd's Auto Sales & Service*, 117 Ga. App. 416 (160 SE2d 633). On the other hand, the indemnitors (Leventhal) needed only to show there was no genuine issue as to one essential element of Tuzman's case to be entitled to summary judgment, i.e., the failure to perform the conditions precedent. *Waldrep v. Goodwin*, 230 Ga. 1 (195 SE2d 432). That indeed was the situation in this case. Therefore, there was no error in the grant of summary judgment to Leventhal, nor in the denial of summary judgment to the Tuzmans.

*Judgment affirmed. Deen, P. J., McMurray, P. J., Carley and Sognier, JJ., concur. Banke, C. J., Pope and Beasley, JJ., dissent. Benham, J., disqualified.*

BEASLEY, Judge, dissenting.

Appellants Dr. and Mrs. Tuzman filed a breach of contract suit seeking $35,000 which represented taxes paid to IRS, attorney fees incurring in resisting the IRS tax claim, and attorney fees and expenses incurred in enforcing the contract.

The contract document, about which there is no dispute, provided in substance that, in consideration of the settlement and dismissal of certain federal lawsuits which had been brought by the Tuzmans against appellees and others, the appellees as indemnitors would indemnify and hold the Tuzmans harmless from any taxes that might have to be paid if the loss they claimed in their 1974 income tax return was disallowed by IRS, and any expenses the Tuzmans incurred in defending against the disallowance. This was tied to the further provision that indemnitors agreed to defend the Tuzmans against the government's claims and would employ attorneys and accountants of their own selection to appear and defend "on behalf of Tuzman at the expense of indemnitors," and would have "sole authority for the direction of the defense," and would be "the sole judge of the acceptability of any compromise settlement" of any tax claim "against Tuzman." Indemnitors also agreed to pay interest in any amount paid by the Tuzmans until indemnified. The Tuzmans also had a contractual right to sue piecemeal to enforce the agreement and to be reimbursed reasonable attorney fees for such enforcement. All of this was conditional on the Tuzmans claiming the business loss "properly" on their tax return in the first place, and *there is no dispute that that was done.*

There is thus somewhat of an inconsistency, in that the indemnitors agreed to indemnify the Tuzmans for their expenses in fighting the disallowance but also undertook, themselves, to defend directly and totally against the disallowance at their own expense, "on behalf of Tuzman." At any rate, it is apparent from considering the whole document that there was in the mind of everyone a fear that the IRS might not allow the deduction, that a challenge to the disallowance would be undertaken, and that the Tuzmans should suffer no monetary losses from this whole matter.

When the IRS did in fact disallow the deduction, the Tuzmans called on the indemnitors to perform their obligations under the contract and stated they would cooperate. The indemnitors began to have some doubts as to their liability under the contract, stating they had some information suggesting that the Tuzmans had breached the agreement, and they sought to have the Tuzmans sign a "reservation of right" agreement by which the indemnitors would challenge the government's claim on behalf of the Tuzmans but would still be able to say they, the indemnitors, were not liable to Tuzman for whatever expenses were incurred and for whatever taxes ultimately had to be paid. According to the record, the tax attorney proposed by the indemnitors, although he had a different typed address on his letterhead in October when he wrote to the Tuzmans' attorney outlining the impasse that had developed, was a member of the firm representing the indemnitors in the agreement transactions in the first place and representing them when they began to balk. The correspondence and affidavits indicate that the Tuzmans refused to agree to this condition and insisted that the attorney representing them in connection with trying to reduce or eliminate the tax disallowance do so in conformity with certain standards in the disciplinary rules of the State Bar of Georgia (Standards 28, 29, 35, 36, 37 & 41; see 241 Ga. 721, 735-737), which were described by the Tuzmans as constituting or effecting an attorney-client relationship between the Tuzmans and the tax attorney. The indemnitors refused to be so bound, taking the position that the formation of an attorney-client relationship between the tax attorney and the Tuzmans would be contrary to the agreement which gave control of selection of attorney, direction of defense, and acceptability of any settlement to the indemnitors.

As a result of the positions taken by each side, Tuzman's own attorney rather than the indemnitors' attorney ultimately represented the Tuzmans in challenging the disallowance, incurred fees in this connection, and ended up settling the matter for a tax which the Tuzmans paid.

The indemnity contract did not contain any reservation of right. Nor did it contain any language showing that the parties intended that indemnitors could maintain a position antagonistic to that of the

Tuzmans with respect to the indemnitors' liability to the Tuzmans at the same time the indemnitors were resisting the tax disallowance on behalf of the Tuzmans. Instead, the short agreement contemplates an identity of interest, that the indemnitors and the Tuzmans shared the common desire to eliminate or mitigate as far as possible the monetary losses which would be a consequence of IRS' disallowance of the "tax shelter" business loss to the Tuzmans from the Georgia Kentucky Coal Company partnership operation. When the indemnitors insisted on the reservation of right, they introduced a new condition into the contract. They raised a new issue not covered by the contract, saying we have an interest which is contrary to yours. Instead of the situtation that has developed being two-sided, i.e., indemnitors and taxpayers versus IRS, it is three-sided, i.e., indemnitors and taxpayers versus IRS but indemnitors also versus taxpayers.

The conversations and negotiations by and between and among the parties to the agreement not being fully set out in the correspondence and affidavits, the facts are not adequately developed for summary judgment. If the indemnitors' attorney had a conflict of interest, as appears might be the case from the fact that the attorney would have an eye on the ultimate non-liability of the indemnitors, his clients, for the tax he was fighting on behalf of the Tuzmans, the fight would obviously be less vigorous than if the indemnitors accepted their liability to pay for the end result, as provided in the contract. It was the Tuzmans' initial liability he was to advocate wholeheartedly against. Whether he and the indemnitors were justified under the contract in maintaining that the contract superseded the disciplinary rules so that the indemnitors could reserve the right to say it was not only the Tuzmans' initial liability but also the Tuzmans' liability ultimately, to pay the tax and bear the expense of fighting it, and that they would not provide an attorney subject to the stated standards, is not clear. A fundamental fact which is not covered by the contract, is whether the parties intended that the indemnitors could select as the attorney to represent the Tuzmans in their challenge to the disallowance the same attorney or firm who would represent the indemnitors in denying their liability to the Tuzmans. I do not believe the contract must be construed as a matter of law in favor of the indemnitors on this point regarding the selection of counsel. Whether, in the circumstances of the relationship here, "attorneys . . . of their own selection" would embrace counsel who, there is some evidence to support, had a conflict of interest because of a dispute between indemnitor and indemnitee not involving the condition precedent, is not established by the record thus far.

I am authorized to state that Chief Judge Banke and Judge Pope, join in this dissent.

DECIDED MARCH 15, 1985 —
REHEARING DENIED MARCH 29, 1985 — 

*Joel D. Burns*, for appellants.
*J. Randolph Evans, Jeffrey M. Smith*, for appellees.